Steven MORISKY, et al., Plaintiffs,

v.

PUBLIC SERVICE ELECTRIC AND GAS COMPANY, Defendant.

Civil Action No 98–473 (JAP).

United States District Court,
D. New Jersey.

Aug. 15, 2000.

Richard M. Schall, Patricia A. Barasch, Robert J. Cox, Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano, Cherry Hill, NJ, for Plaintiffs.

Theresa Donahue Egler, Michael T. Bissinger, Pitney, Hardin, Kipp & Szuch, Morristown, NJ, for Defendant.

## OPINION

PISANO, District Judge.

Before the Court is plaintiffs' motion to certify its federal claim as a collective action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, and its state law claim as a class action under Federal Rule of Civil Procedure 23. Opposition was

filed, and the Court heard oral argument on June 29, 2000. For the reasons set forth below, plaintiff's motion is denied.

### Background

Plaintiffs bring this action against their employer, defendant Public Service Electric and Gas ("PSEG"), on behalf of themselves and a proposed class of employees, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, ("FSLA" or the "Act"), and the New Jersey Wage and Hour Law, N.J.S.A. 34:11–56a *et seq.* ("NJWHL"). Specifically, plaintiffs assert that defendant has failed to pay them overtime compensation for hours worked in excess of forty per week, misclassifying them as exempt "administrative" employees under the relevant law when in fact they are non-exempt "production" workers and, therefore, entitled to such overtime compensation.[1] In the present motion, plaintiffs are seeking to certify their federal claim as a collective action under § 216(b) of the FLSA, and their state law claim as a class action under Federal Rule of Civil Procedure 23.

Defendant PSEG generates electricity for commercial and public use at plants located throughout New Jersey. All of the plaintiffs and the purported class are "MAST" associates of defendant-management, administrative, supervisory and technical employees—and work at defendant's nuclear business unit at Artificial Island in Hancocks Bridge, New Jersey. All also fall within the same salary grades, 9 through 13. Employees in these grade levels are those who hold positions that have been classified as exempt by PSEG. *See* Certification of Joseph Stella at ¶ 8.

By way of background, the Court notes that defendant's overtime policy has undergone several changes over the past ten years or so. Prior to 1989, *all* of defen-

dant's employees in salary grades 9 through 13 received overtime compensation of at least one and one-half of their regular rate of pay for all hours worked in excess of forty per week. Stella Dep., 50:14–20, Exh. A to Certification of Theresa Egler ("Egler Cert."). In 1989, however, defendant revised its policy. PSEG continued to pay employees in grades 9 and 10 time and a half for overtime work, but reduced the overtime rate paid to employees in salary grades 11 through 13 to either one and a quarter their regular pay (grade 11) or straight time (grades 12 and 13). *Id.* at 50:21 to 51:12.

Not surprisingly, these changes to the over time policy prompted complaints to the Department of Labor ("DOL") by affected employees. In response, the DOL conducted an investigation which prompted PSEG to conduct a self-audit of its overtime compensation practices. As a result, certain positions were re-classified as non-exempt, and those employees were compensated by defendant for retroactive overtime. Over the next several years, defendant continued to review the duties of various positions within its organization and continued to make revisions to its overtime policies, some of these changes prompting complaints and further investigation by the DOL.

The events giving rise to the underlying lawsuit occurred in 1997. In April of that year, defendant further reduced overtime pay for certain employees. All overtime compensation for employees in salary grades 12 and 13 was completely eliminated, while employees in grades 9, 10, and 11 were only eligible for overtime pay after working 48 rather than 40 hours in a week. According to plaintiffs, numerous employees filed complaints following the 1997 cuts, and the present lawsuit ensued when

---

1. Sections 6 and 7 of the FLSA guarantee most employees a minimum wage and overtime pay. 29 U.S.C. §§ 206, 207. Section 13(a)(8) of the FLSA, however, exempts employees who hold certain types of positions.

29 U.S.C. § 213. New Jersey law provides similar guarantees, and also exempts certain employees from its requirements. *See* N.J.S.A. 34:11–56a4.

these complaints were not satisfactorily resolved.

## A. The Named Plaintiffs

The issue presently before the Court is whether the present action may appropriately proceed as a collective action. The key issue to be resolved is whether the named plaintiffs and the proposed class are "similarly situated," such that the named plaintiffs are adequate representatives of the proposed class. See 29 U.S.C. § 216(b) (an action may be pursued in a representative capacity "for other employees similarly situated"). Set forth below is a listing of the individual plaintiffs and a brief description of their job responsibilities:

1. Michael Darraugh: Plaintiff Darraugh is employed as a procedure writer in the operations department. He hold the job title of Technical Analyst. According to plaintiff, operations procedure writers "review[ ] and prepare[ ] the procedures that the operations personnel must follow to operate the nuclear reactor, electrical generating equipment, and other components necessary for the generation of electricity." Pl. Mem. at 25. Defendant classifieds Darraugh as exempt pursuant to the administrative exemption to the FSLA's overtime compensation requirements.[2]

2. Dennis Kimble: Plaintiff Kimble, whose job title is also Technical Analyst, holds the position of procedure writer in defendant's maintenance department. Kimble's responsibilities are similar in many respects to plaintiff Darraugh's position described above, except his work focuses on maintenance procedures rather than operations. As with plaintiff Darraugh, defendant maintains that that Kimble is exempt pursuant to the administrative exemption.

3. Howard Hiles: At the time this lawsuit was filed, Plaintiff Hiles also held the title of Technical Analyst.[3] He performed the job of Quality Verification Inspector in defendant's Quality Assurance Department. Hiles' role was essentially to ensure compliance with industry standards, federal regulation and safety codes. His duties were to "perform inspection and in-progress monitoring of selected maintenance and design change activities to assure the plant's quality standards and policies [were] being maintained." Id. at 29. Defendant classified Hiles as exempt pursuant to the administrative exemption.

4. Nicholas Ferrett: Plaintiff Ferrett was employed as a Designer at defendant's nuclear business unit. According to plaintiff, Ferrett worked as a hanger designer and a pipe designer. As a hanger designer, he worked on design changes affecting the supports, or "hangers," for the plant's piping system. As a pipe designer, he would make recommendations as to where to place piping in the plant. Defendant classified Ferret as exempt under the professional and/or administrative exemption.

Defendant notes that in August 1998, it assigned Ferret a new title, "CAD Drafter." In this new position, Ferrett was reclassified as a non-exempt employee because, according to defendant, he was transferred into a different department and preformed primarily drafting work.

5. William Kittle: Plaintiff Kittle is a Technical Specialist/Senior Engineer in PSEG's In–Service Inspection and In–Service Testing Group. Kittle's primary area of responsibility was conducting "Appendix J leak rate testing."[4] See 10 C.F.R. § 50, Appendix J. His job was to perform in-

---

2. The FSLA, 29 USC § 213(a)(1) exempts "bona fide executive, administrative, or professional" employees from the FLSA's overtime pay requirements.

3. Defendant notes that Hiles has since been assigned to a supervisory position in another department.

4. Federal regulations require that defendant maintain a testing program for the containment of radioactive materials in its pipes and valves in the event of an emergency.

spection and testing of components associated with the plant's containment building, measuring the degree to which equipment in the containment building was leaking radioactive material. Defendant considers Kittle as exempt pursuant to the administrative and/or professional exemption.

6. Lyle Mayer: Plaintiff Mayer is a Senior Staff Engineer, assisting the maintenance and operations departments. He works on design change packages ("DCPs"), which are documents created by engineers in support of a proposed design change to the physical plant. According to plaintiffs, Mayer also "works on teams assigned to actually install or repair a piece of plant equipment as outlined in the DCP," *id.* at 37, and is involved "as a team member in the physical installation or modification of components." *Id.* at 38. Defendants classify Mayer as exempt under the professional exemption, or in the alternative, the administrative exemption.

7. Steven Morisky: Plaintiffs note that although Morisky has held several positions with defendant during the period at issue in this lawsuit, at the time the complaint was filed he held the position of Technical Analyst/Installation and Test Engineer, and for the purposes of this litigation proposes to represent this group of employees. In this position, Morisky was "involved in readying the plant for operation and production." *Id.* at 40. His duties were varied, and, among other things, included monitoring the work done by contractors in the plant to ensure it was in compliance with technical and safety specifications and resolving technical problems in plant installation work. Defendant maintains Morisky was exempt under the administrative and/or executive exemption.

**5.** Section 216(b) of the FLSA provides in pertinent part:
An action to recover ... liability ... may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee

*Discussion*

**A. FSLA Collective Action**

The FLSA allows one or more employees to pursue an action in a representative capacity for "other employees similarly situated." 29 U.S.C. § 216(b). This type of action, known as a "collective action," allows potential class members who are similarly situated to the named plaintiffs to file a written consent with the court to opt in to the case.[5] *Id.* A collective action affords plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Further, "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact." *Id.*

■ The primary issue to be decided in the present motion is whether the named plaintiffs are sufficiently "similarly situated" to the opt-in plaintiffs such that this case may proceed as a collective action. 29 U.S.C. § 216(b). Plaintiffs bear the burden of showing they are similarly situated to the remainder of the proposed class. *Bayles v. American Med. Response of Colo., Inc.,* 950 F.Supp. 1053, 1062–63 (D.Colo.1996). Plaintiffs purport to bring this action on behalf of

all non-supervisory, non-professional employees of defendant, employed at defendant's nuclear generating stations located in Salem County, New Jersey, who held positions in salary grades 9 through 13, and whose work impacts upon the production process at defendant's nuclear generating plants; impacts upon the maintenance, retrofitting, safety and/or operations of those plants; or otherwise is linked to and affects the

shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.
29 U.S.C. §§ 216(b).

ability and efficiency of those plants to generate their product-electricity.

Pl. Mem. at 1. Specifically excluded from this class are employees who plaintiffs deem to be "supervisors" and "professionals" under the FLSA, and those whose work is "truly administrative in nature." *Id.* at 2.

At this stage in the litigation, over 100 potential plaintiffs have filed consent forms and are ready to be joined in this action. Plaintiffs assert that they are similarly situated to the opt-in plaintiffs for the purposes of § 216(b) in that all are victims of defendant's "uniform policy of ignoring-or at the very least misapplying" the proper analysis in making the determination that plaintiff employees are exempt from the overtime compensation requirements of the FLSA pursuant to the statute's administrative exemption. Pl. Reply at 18. As stated earlier, plaintiffs claim they were misclassified as "administrative" employees although their work is truly productive in nature. Plaintiffs further stress that all plaintiffs are similarly situated in that the potential class is limited to only those employees in one location who fall within discreet salary grade levels and were not paid proper overtime compensation for the hours they worked in excess of forty per week.

■ Defendant, on the other hand, argues that plaintiffs are not proper representatives of the opt-in plaintiffs because each employee performs varied job duties, and moreover, that the class, as defined, is not appropriate because the scope of the class depends upon the outcome of the merits of the litigation. Furthermore, defendant argues that plaintiffs' claim that they were improperly classified as exempt requires a highly fact-specific analysis of each employee's job responsibilities, making class treatment inappropriate. The Court agrees with defendant.

6. Plaintiffs note that, as of the time this motion was filed, 141 employees have filed con-

The FSLA does not define the term "similarly situated," but courts that have addressed the issue have generally explicitly adopted or implicitly recognized a two-step approach. *See Thiessen v. General Electric Capital Corp.*, 996 F.Supp. 1071, 1080 (D.Kan.1998) (and cases cited therein). Under this approach, the court first makes a determination at the "notice stage," *i.e.*, the point at which the court determines whether notice of the action should be given to potential class members. *Id.* Because at this point the court usually has only minimal evidence before it-the pleadings and any affidavits submitted by the parties-"this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Id.* (quoting *Brooks v. Bellsouth Telecommunications, Inc.*, 164 F.R.D. 561, 568 (N.D.Ala. 1995)). At this stage, some courts have required "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Id. See, e.g., Sperling v. Hoffman–La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J.1988).

In the next step of this approach, the court "makes a second determination after discovery is largely complete and the case is ready for trial." *Thiessen*, 996 F.Supp. at 1080. In its analysis of the "similarly situated" question at this stage, the court has much more information on which to base its decision and, as a result, now employs a stricter standard. *Id.* If the court finds the plaintiffs are similarly situation, the case is allowed to proceed to trial as a collective action.

This case is somewhat different. It is clearly beyond the first tier of the above analysis, as over 100[6] potential plaintiffs have already opted into this lawsuit. Further, pursuant to the most recent scheduling order issued by Magistrate Judge Ro-

sents to join the litigation.

sen, discovery was to have been completed by January 14, 2000, well before the present motion was filed. *See* Order filed November 10, 1999. It is appropriate, therefore, for the Court to apply a stricter standard in its analysis of the question before it, and in doing so, finds that plaintiffs have not met their burden.

Plaintiff argue that defendants' "common scheme" in 1997 to deny them overtime binds the class, making all plaintiffs similarly situated. However, as defendants correctly point out, what plaintiffs are really challenging here is defendant's determination that they are exempt under the FSLA. Defendant classifies all employees it places in grades 9–13 as exempt, therefore any "plan" or "scheme" which reduces or eliminates overtime compensation to such employees, if one existed, cannot be improper on its face. To determine which employees are entitled to overtime compensation under the FSLA depends on an individual, fact-specific analysis of each employee's job responsibilities under the relevant statutory exemption criteria. Therefore, "similarly situated" in this case must be analyzed in terms of the nature of the job duties performed by each class member, as the ultimate issue to be determined is whether each employee was properly classified as exempt.

Plaintiffs have made no showing that the job responsibilities of the named plaintiffs are the same or similar to those of the remaining members of the proposed class, or that the opt-in plaintiffs could properly be classified as non-exempt employees. In fact, plaintiffs do not even discuss the job responsibilities of the opt-in plaintiffs. Instead, plaintiffs reference an extremely broad "general connection" all plaintiffs have to the production of electricity. Defendant, on the other hand, has pointed to many specific dissimilarities between the job duties of the name plaintiffs and the opt-in plaintiffs which make certification as

a collective action inappropriate. Defendant references many of the over 100 fact questionnaires plaintiffs solicited from PSEG employees, which show that the opt-in plaintiffs hold a wide variety of positions and perform a wide variety of job duties. *See* Supplemental Certification of Theresa Egler ("Egler Supp."), Exhibits 1 through 16. Even employees who hold the same job title do not necessarily perform the same work. *See* Egler Supp., Exhs. 2 and 3. To the extent that any of these employees may be properly classified as exempt, these potential plaintiffs simply are not similarly situated with the named plaintiffs.

Plaintiffs points to several age discrimination cases in support of their argument that class certification is appropriate despite the varied job responsibilities of all plaintiffs. However, as noted by the court in *Pfaahler v. Consultants for Architects, Inc.,* No. 99–C–6700, 2000 WL 198888, 2000 U.S. Dist. Lexis 1772, *8–9 (N.D.Ill., Feb. 8, 2000) [7], a discrimination case focuses on whether the defendant had a policy of discriminating against its employees, therefore, a primary showing of discrimination is common to all potential claimants, making them similarly situated. The focus in this action, however, is on the distinction between an exempt and non-exempt employee. Unlike in a discrimination case, the focus in not on PSEG's actions, but instead on the nature of the employees' job duties in the context of the relevant exemption criteria. *See id.* at *9, 2000 WL 198888. Therefore, a collective action would only be appropriate where "the plaintiff[s] make[ ] some showing that the nature of the work performed by other claimants is at least similar to [their] own." *Id.*

In addition to the fact that plaintiffs have failed to make the proper showing that they are similarly situated to the opt-in plaintiffs, the Court finds other factors

---

7. *Pfaahler* involved a plaintiff seeking to bring a collective action on behalf of himself and employees who were allegedly misclassified as independent contractors and therefore denied overtime wages.

exist which make this case unsuitable for collective treatment. First, the scope of the class is dependent upon the answer to the question that is at the heart of this case-which employees are properly classified as exempt? Despite all of plaintiffs' legal engineering, in its essence the proposed class consists of a group of individuals with different jobs and different job responsibilities who believe they have been improperly classified as exempt and denied overtime wages. Indeed, in order to define the class plaintiffs make a preliminary cut of those employees they themselves have determined are properly exempt under the law-namely, professionals, supervisors, and "truly administrative" employees. Thus, plaintiffs are seeking to have this Court certify a class based upon their own belief as to which employees do not satisfy any of the exemption criteria-the very issue to be litigated in this action.

Furthermore, the Court finds that litigating this case as a collective action would be anything but efficient. The exempt or non-exempt status of potentially hundreds of employees would need to be determined on a job-by-job, or more likely, an employee-by-employee basis.[8] "[T]he exempt or non-exempt status of any particular employee must be determined on the basis of whether his duties, responsibilities and salary meet all the requirements of the appropriate section of the regulations...." 29 C.F.R. § 542.201(b)(2). Determining whether an employee's duty is administrative or productive (the distinction which plaintiff primarily focuses upon) is extremely individual and fact-intensive, requiring "a detailed analysis of the time spent performing administrative duties" and "a careful factual analysis of the full range of the employee's job duties and responsibilities." *Cooke v. General Dynamics Corp.*, 993 F.Supp. 56, 59–61 (D.Conn.1997) (discussing the administrative/production dichotomy and noting that

the analysis is "necessarily fact intensive," "turn[ing] on a careful factual analysis of the full range of the employee's job duties and responsibilities," and further noting that "the lines between production and administration activity are anything but clear"). The individual nature of the inquiry required make collective treatment improper in this case.

## B. Class Treatment Under FRCP 23

Class actions are governed by Federal Rule of Civil Procedure 23. A proposed class representative seeking class certification must satisfy all four requirements of Rule 23(a) and must also demonstrate that the action is maintainable under one of the three categories set forth in Rule 23(b). *Barnes v. American Tobacco Co.*, 161 F.3d 127, 140 (3d. Cir.1998). In addition, a class must be adequately defined so that the individual class members may be easily identified. *See In re School Asbestos Litigation*, 56 F.3d 515, 519 (3d Cir.1995). For many of the same reasons that make collective treatment improper, the court finds that class certification under Rule 23 inappropriate.

Rule 23(a) provides that

[o]ne or more members of a class may sue or be used as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). The burden of "establish[ing] that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met" rests with the plaintiff. *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d. Cir. 1994). Courts must undertake a "rigorous analysis" to ensure that the putative class

---

**8.** For example, three of the seven individual plaintiffs hold the title Technical Analyst, yet their job duties vary substantially.

and its proposed representative satisfy each of the prerequisites to class certification. *See General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

In considering whether certification is appropriate, a court must refrain from conducting a preliminary inquiry into the merits of the action, *see Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). However, it may be necessary for the court "to analyze the elements of the parties' substantive claims and review fact revealed in discovery in order to evaluate whether the requirements of Rule 23 have been satisfied." *In re Ford Motor Co. Ignition Switch,* 174 F.R.D. 332, 353 (D.N.J.1997).

■ Plaintiffs have moved for class certification pursuant to Rule 23(b)(1)(A), 23(b)(2), and 23(b)(3). Because the Court concludes that the commonality and typicality threshold requirements of Rule 23(a) have not been met and, further, that the class is not adequately defined because its scope is dependent on the outcome of the litigation, the Court need not reach the question of whether certification is appropriate under any of these three subsections.

Rule 23(a) requires that there be questions of law or fact common to the class. Plaintiffs stress that there exists a "common scheme" that makes class certification appropriate. However, the claims in this action for which plaintiffs seek class treatment, namely, violations of state labor law, are individual in nature. As discussed in detail in the previous section, the question of whether defendant improperly classified employees as exempt is unique to each employee and his or her particular job responsibilities.

Rule 23(a) also conditions class certification on the plaintiffs establishing that the legal positions of the representative parties are "typical" of the absent class members. Plaintiffs' claims meet the typicality requirement if they "arise[ ] from the same

event or practice or course of conduct that gives rise to the claims of the class members, and ... [are] based on the same legal theory." *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 923 (3d Cir. 1992). Conversely, a representative's claims would be atypical if his or her "factual or legal stance is not characteristic of that of the other class members." *In re Milestone Scientific Securities Litig.,* 183 F.R.D. 404, 415 (D.N.J.1998). Because of the individualized nature of the factual and legal inquiry necessary to determine an employees exemption status discussed at length above, the named plaintiffs "factual or legal stance" cannot be said to be characteristic of the other class members.

Finally, the Court notes that plaintiffs dedicate a significant amount of their 83–page brief to addressing the merits of the underlying action. Argued in great detail is the proposition that PSEG did not perform the necessary detailed analysis in determining the exemption status of the plaintiff employees. Further, in an attempt to show that the seven named plaintiffs are improperly classified as exempt employees, at least 17 pages of plaintiffs' brief is spent describing their job duties and how these duties impact upon the production process. Contrary to plaintiff's intentions, this only further convinces the Court that the issue at the heart of this litigation requires a lengthy, individual, detailed, fact-intensive analysis of each potential claimant's job responsibilities and exemption status. Class or collective treatment is simply not appropriate in this case. Accordingly, plaintiff's motion shall be denied.

### Conclusion

For the foregoing reasons, plaintiff's motion for collective/class certification is denied. An appropriate order follows.

### ORDER

Before the Court are is plaintiffs' motion to certify its federal claim as a collective action under the Fair Labor Standards

Act, 29 U.S.C. §§ 201 *et seq.*, and its state law claim as a class action under Federal Rule of Civil Procedure 23. Opposition was filed, and the Court heard oral argument on June 29, 2000. For the reasons set forth in the attached opinion,

IT IS on this _____ day of August 2000,

ORDERED that plaintiff's motion is DENIED.