**Michael J. POREDA, Jr., Individually and on Behalf of all other Persons Similarly Situated, Plaintiff**

v.

**BOISE CASCADE, L.L.C., Defendant.**

**Civil Action No. 07–30177–MAP.**

United States District Court,
D. Massachusetts.

Jan. 22, 2008.

---

John D. Connor, Moriarty & Connor, Daniel J. Finnegan, Jeffrey E. Poindexter, Bulkley, Richardson & Gelinas, Springfield, MA, for Plaintiff.

John E. Duke, Michael L. Rosen, Foley Hoag LLP, Boston, MA, for Defendant.

*MEMORANDUM AND ORDER WITH REGARD TO PLAINTIFF'S MOTION FOR PRELIMINARY COLLECTIVE CERTIFICATION AND FOR COURT FACILITATION OF NOTICE PURSUANT TO 29 U.S.C. § 216(b) (Document No. 2)*

NEIMAN, United States Chief Magistrate Judge.

Michael J. Poreda ("Plaintiff") alleges in this action brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, that his employer, Boise Cascade, L.L.C. ("Defendant"), has failed to pay overtime wages to its non-exempt employees who are paid on a semi-monthly basis and who have worked overtime during the past three years (what Plaintiff refers to as the "FLSA Class").[1] In his original motion, Plaintiff sought an order: (1) preliminarily certifying this action as a representative FLSA collective action pursuant to 29 U.S.C. § 216(b); (2) requiring that Defendant provide Plaintiff, in electronic format, with the names, addresses, email addresses and telephone numbers of all members of the FLSA Class within fifteen days; (3) approving a proposed FLSA notice form; (4) facilitating notice of this action to the FLSA Class; (5) ordering Defendant to post the notice in each facility where members of the FLSA Class work; and (6) ordering Defendant to refrain from engaging in communications or activities that may improperly influence, mislead or discourage putative plaintiffs from joining this case. As will be described, however, Plaintiff modified these requests following oral argument on January 4, 2008. (See Document No. 18–3

(Clarification of Relief Sought by Plaintiffs [sic] Pursuant to Motion for Preliminary Collective Certification) (hereafter "Plaintiff's Clarification").)

Plaintiff's motion has been referred to this court pursuant to 28 U.S.C. § 636(b). For the following reasons, Plaintiff's motion will be allowed, albeit on slightly different terms than Plaintiff originally proposed and grounded, in part, on the parties' post-argument submission, which includes Plaintiff's Clarification.

## I. BACKGROUND

The following background comes directly from the complaint and Plaintiff's affidavit and, for present purposes, is presumed to be true. *See Kane v. Gage Merch. Servs., Inc.,* 138 F.Supp.2d 212, 214 (D.Mass.2001) (noting that preliminary FLSA class determinations are usually based "only on the pleadings and any affidavits which have been submitted"). Further facts, *e.g.,* averments from Defendant's affiant, are included in the court's discussion below.

Defendant manufactures engineered wood products, lumber, etc., and distributes a line of building material to customers throughout the United States. (Poreda Aff. ¶ 3.) It employs more than 10,000 people and has distribution facilities in twenty-three states. (*Id.* ¶ 4.) Plaintiff has worked at Defendant's Westfield, Massachusetts, facility as a materials handler since around April 1, 2006. (*Id.* ¶ 2.)

Plaintiff, an hourly employee, is paid $13 per hour. (*Id.* ¶ 5.) Defendant monitors Plaintiff's hours by way of an electronic timekeeping system, *i.e.,* Plaintiff has an electronic timecard that he swipes at the

---

1. Plaintiff also raises two pendant state-law claims for which he contends he will seek class action certification pursuant to Fed. R.Civ.P. 23. The state-law claims are not presently at issue.

beginning and end of each workday. *(Id.* ¶ 6.) Each Monday, Defendant provides Plaintiff with a printout of the hours that he worked the previous week. *(Id.* ¶ 7.) Defendant requires Plaintiff to verify the accuracy of the printout by signing it each Monday. *(Id.)*

Defendant has two pay periods each month; accordingly, Plaintiff is paid on a semi-monthly basis. *(Id.* ¶ 8.) Plaintiff asserts that he frequently works more than forty hours per week and that he is paid "overtime" at a rate of one and one-half times his regular wage. *(Id.* ¶ 9.) According to Plaintiff, however, Defendant does not pay him for overtime hours worked in a pay period at the same time it pays him his "straight time" for the pay period. *(Id.* ¶ 10.) This means that Plaintiff can wait up to a month after the overtime was actually worked before he is paid for the overtime. *(Id.)*

In 2006, Plaintiff questioned Defendant's payroll practices with human resources personnel. *(Id.* ¶ 11.) When human resources failed to respond to Plaintiff's satisfaction, he contacted the Massachusetts Attorney General's ("AG's") Office. *(Id.* ¶ 13.) Plaintiff asserts that the AG's Office informed him that Defendant's payroll practices violated state law. *(Id.)* Upon reporting that to Defendant, however, Defendant allegedly told Plaintiff and other employees that if they did not like the payroll practices they could leave the company. *(Id.* ¶ 14.)

Plaintiff filed his complaint on September 25, 2007. Count I, the subject of the present motion, is brought as a "collective action" pursuant to 29 U.S.C. § 216(b) "on behalf of ... [P]laintiff and all other non-exempt persons who are or who have been employed by ... [D]efendant anywhere in the United States, have been paid on a semimonthly basis and have worked overtime between September 25, 2004 and the date of final disposition of this action." (Complaint ¶ 35.) In due course, Plaintiff filed the instant Motion for Preliminary Collective Certification and Court Facilitation of Notice, Defendant filed an opposition, and Plaintiff filed a reply brief. In the interim, Plaintiff filed consent-to-sue forms completed by him and twenty-three other individuals, all of whom appear to be employed at Defendant's Westfield facility.

## II. DISCUSSION

■ As indicated, Plaintiff's motion, at least as originally filed, has six specific requests, each revolving around the preliminary collective action certification question, Request No. 1. The court will address each request in turn, mindful that, although magistrate judges usually cannot directly authorize *final* class certifications *(see* 28 U.S.C. § 636(b)(1)(A)), this court has the authority to resolve the instant requests "because they are only *preliminary* determinations and are not dispositive." *Barrus v. Dick's Sporting Goods, Inc.,* 465 F.Supp.2d 224, 229 n. 1 (W.D.N.Y.2006) (emphasis added). *Accord Patton v. Thomson Corp.,* 364 F.Supp.2d 263, 265–66 (E.D.N.Y.2005). As will become evident, Plaintiff's Clarification amends several of these requests and seeks further relief as well.

A. *Request No. 1: Preliminary Certification of the FLSA Class*

■ In order to obtain preliminary collective action certification, a plaintiff needs to demonstrate that he is "similarly situated" to the other members of the proposed class. *See* 29 U.S.C. § 216(b).[2] As District

---

2. In pertinent part, section 216(b) provides as follows:

Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees af-

Judge William G. Young recently noted, a majority of courts addressing the issue of whether the similarly situated requirement has been satisfied have, like Judge Young himself, adopted a two-tier approach. *See Trezvant v. Fidelity Employer Servs. Corp.*, 434 F.Supp.2d 40, 42, 43 (D.Mass. 2006) (citing cases). Under this approach, "the court makes an initial determination of whether the potential class should receive notice of the pending action and then, later, after discovery is complete, the court makes a final 'similarly situated' determination." *Id.* at 43 (citation omitted). As indicated, this court is concerned only with the initial determination.[3]

■ "Usually, the initial stage determination is based 'only on the pleadings and any affidavits which have been submitted.'" *Trezvant*, 434 F.Supp.2d at 43 (quoting *Kane*, 138 F.Supp.2d at 214). As noted by Judge Young, a "fairly lenient" standard is used to make this preliminary determination, which usually results in certification of the collective class:

> fected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court

As a result of the minimal evidence available, this determination is made using a fairly lenient standard, which typically results in conditional certification of the representative class. At this stage, courts do not need to make any findings of fact with respect to contradictory evidence presented by the parties or make any credibility determinations with respect to the evidence presented.

*Id.* (citation and internal quotation marks omitted). A plaintiff can meet this standard "by making a modest factual showing or asserting *substantial* allegations that 'the putative class members were together the victims of a single decision, policy, or plan that violated the law.'" *Id.* (quoting *Thiessen v. Gen. Elec. Capital, Corp.*, 267 F.3d 1095, 1102 (10th Cir.2001) (emphasis in original)). "'Substantial allegations' have been defined as detailed allegations supported by affidavits that successfully engage defendant's allegations to the contrary." *Id.* at 43 n. 2 (citing cases).

> in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.
> 29 U.S.C. § 216(b).

3. Although only the initial determination is presently at issue, the court notes that, ultimately, Judge Young's two-tier approach, which this court too adopts, is not much different from the standards Defendant cites from other jurisdictions. *See, e.g., Smith v. Tradesmen Int'l, Inc.*, 289 F.Supp.2d 1369, 1371 (S.D.Fla.2003) (district court ultimately determines "(1) whether there are other employees who desire to opt in; and (2) whether these employees are similarly situated with respect to their ... pay provisions") (citation omitted); *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F.Supp.2d 493, 496 (D.N.J.2000) ("Plaintiffs bear the burden of showing they are similarly situated to the remainder of the proposed class.").

■ For preliminary certification purposes, the court finds that Plaintiff has made his initial stage burden. Plaintiff has supplied twenty-four consent-to-sue forms from what appear to be Westfield employees.[4] Presumably, each is an hourly employee who is paid on a semi-monthly basis in a manner similar to how Plaintiff is paid. (See Poreda Aff. ¶¶ 5, 8.) Even Defendant's payroll supervisor, Kristi Covington ("Covington"), avers that a number of the Westfield employees—including, presumably, the twenty-three other individuals identified here—are situated "like Plaintiff." (See Covington Aff. ¶ 11.)

Covington also makes the following averments which go beyond the Westfield facility:

8. [Defendant] currently employs approximately 7,548 nonexempt employees, 3,395 of which [sic] are paid semimonthly. Eight different labor unions, each with its own collective bargaining agreement with [Defendant], represent approximately 1,004 of the employees who are paid semimonthly. These employees are classified as "hourly" and paid semi-monthly in arrears.

9. Of the non-unionized employees who are paid semimonthly, 1,031 are paid in arrears. These employees are classified as "hourly," in that each of their paychecks is reflective of all hours actually worked, including overtime, in the pay period immediately preceding the pay date.

10. As to the remaining 1,360 non-unionized employees who are paid on a semi-monthly basis, these employees receive some of their pay on a "current" basis.... These employees, including non-exempt employees at Boise's West-

field, Massachusetts locations, are classified as "salaried" non-exempt, in that they are paid 1/24 of their annual salary on a semi-monthly basis, yet are still eligible to receive overtime under the [FLSA] and applicable state law.

(*Id.* ¶¶ 8–10.) Covington, however, indicates that there may be some key differences between Westfield employees, like Plaintiff, and others. For example, employees who are paid on a semi-monthly basis may be subject to two distinct payroll systems, either the electronic timecard system used at Westfield or a written timesheet system used elsewhere. (Covington Aff. ¶¶ 5, 6.) In addition, a number of employees belong to a labor union, while many others do not. (*See id.* ¶¶ 8, 9.)

As indicated, Plaintiff initially sought to bring Count I on behalf of "all ... nonexempt persons who are or who have been employed by ... [D]efendant anywhere in the United States, have been paid on a semi-monthly basis and have worked overtime between September 25, 2004 and the date of final disposition of this action." (Complaint ¶ 35.) However, upon considering Covington's affidavit, Plaintiff states in his post-argument Clarification that he is now seeking preliminary certification of the following class: (a) the 1,360 existing employees of Defendant who are non-unionized, paid semi-monthly and are paid current, as identified in paragraph 10 of Covington's Affidavit; and (b) all former employees who were paid in the same manner as the 1,360 existing employees identified in subsection (a). Plaintiff also indicates that he may seek to expand the class, if appropriate, after obtaining additional information in discovery.

---

**4.** Although it is not immediately apparent that all twenty-four are employees of the Westfield facility, twenty-two list home addresses in either Westfield, West Springfield or Spring-

field, Massachusetts, one lists a Hinsdale, Massachusetts, address, and another lists no address, but a "413" area code phone number.

"As a matter of sound case management," the court, at this preliminary stage, should inquire only "as to whether a manageable class exists" and, likewise, only "require plaintiffs to make a preliminary factual showing that there actually exists a similarly situated group of *potential* plaintiffs." *Trezvant,* 434 F.Supp.2d at 43–44 (citing *Cintron v. Hershey Puerto Rico, Inc.,* 363 F.Supp.2d 10, 18 (D.P.R. 2005) (emphasis added)). In the court's view, Plaintiff has made that showing here, at least for the class he has since redefined. Defendant's arguments to the contrary, the court finds immaterial for present purposes the fact that some employees falling within the class may be part of a union. Similarly immaterial for present purposes is the distinction between the two payroll systems; the net effect of these systems—and the focus of Plaintiff's federal claim—is the same.

To be sure, Defendant argues with considerable force that its overtime compensation system passes muster under an interpretive bulletin issued by the United States Department of Labor and upon which both parties rely. *See* 29 C.F.R. § 778.106 (2008). In the court's opinion, however, there are significant factual issues which need to be sorted out before the strength of Defendant's merits-based argument can be fully resolved. Moreover, as Plaintiff has persuasively argued, the rights of putative class members may expire in the interim. Also, given the clarified class definition, the burden to send notices is not as great as Defendant first assumed. At bottom, the court concludes that there is little strength to Defendant's suggestion that, before notices are sent out, the court should attempt to resolve whether Defendant has complied with the interpretive bulletin.

In so ruling, the court specifically reiterates that it is not *certifying* the FLSA class. Rather, the court is simply *preliminarily* certifying the action as a representative FLSA collective action in accord with the definition provided in Plaintiff's Clarification. "After sufficient discovery, the district court will be in a position to determine whether those employees who have chosen to join the lawsuit are similarly enough situated for the purposes of maintaining a collective action at trial." *Patton,* 364 F.Supp.2d at 266 (citing *Rodolico v. Unisys Corp.,* 199 F.R.D. 468, 480 (E.D.N.Y.2001)).

B. *Request No. 2: Defendant's Provision of Contact Information*

Plaintiff next seeks identifying information with respect to all potential FLSA class members on an expedited basis, *i.e.,* within fifteen days. After inquiring of Defendant's counsel at oral argument, a twenty-day time frame for such information seems reasonable. Indeed, Plaintiff's Clarification now seeks such information with respect to the more targeted class described above within twenty days.

C. *Request No. 3: Approval of Notice*

Plaintiff initially sought court approval of his proposed notice, but then appeared to withdraw that request, believing that he, like Defendant (see below), could communicate with potential class members unilaterally. At oral argument, however, the court discussed with the parties the advantages of court-approved notice and, in addition, asked them to propose such a form—within guidelines suggested by the court—in light of the likelihood that it would approve Plaintiff's motion. The parties have since done so and the court is prepared to approve without alteration the notice (and accompanying consent form) contained in Document No. 18.

### D. *Request No. 4: Facilitating Notice*

Plaintiff's initial request that the court "facilitate" the notice is not specifically included within Plaintiff's Clarification. To the extent Plaintiff was simply seeking court "approval" of the notice, it has done so as described above.

### E. *Request No. 5: Posting the Notice*

Plaintiff no longer pursues this request and the court will not consider it further.

### F. *Request No. 6: Order Restraining Defendant from Engaging in Improper Activities*

 Plaintiff initially sought an order restraining Defendant from engaging in improper activities. As the court indicated at oral argument, it was concerned with several purported statements—particularly from a regional manager—reported in a new affidavit from Plaintiff and a separate affidavit of another employee, Carlos De-Jesus. (See, *e.g.,* Pl.'s Reply, Poreda Aff. ¶ 6 (regional manager allegedly told another supervisor that "if we get him [Poreda], the rest will back off") and DeJesus Aff. ¶ 3 (same regional manager told DeJesus that "if you sign the paper, [*i.e.,* the consent to sue form,] people around here tend not to forget").) As Defendant indicated at oral argument, however, it is well aware that its employees are prohibited from retaliating against any employee for exercising his or her FLSA rights. Moreover, Plaintiff and Defendant's proposed notice to the class includes language to that effect, language which the court finds sufficient.

### G. *New Requests Sought in Plaintiff's Clarification*

 In his Clarification, Plaintiff also seeks an order precluding Defendant, as well as its agents and representatives, from communicating about this lawsuit with potential FLSA class members who have consented to join this action and who are represented by counsel. (Plaintiff's Clarification ¶ 4.) Plaintiff also seeks a similar order precluding such communication with potential FLSA class members who have *not* consented to join this action unless such communication has been approved by the court. (*Id.* ¶ 5.)

The court will not grant these additional requests for at least three reasons. First, these requests were not specified as potential relief sought in Plaintiff's original motion; it is somewhat unfair to spring such requests on Defendant in its post-argument Clarification. Second, Defendant's attorneys are already well aware of their obligations about communications under the applicable rules of professional conduct. Third, the court believes that the anti-retaliation provision in the agreed-upon notice (paragraph 6) will sufficiently deter Defendant from engaging in any inappropriate conduct.

### III. Conclusion

For the reasons stated, the court rules as follows:

1. Pursuant to 29 U.S.C. § 216(b), the court preliminarily certifies this action as a representative FLSA collective action with respect to (a) the 1,360 existing employees of Defendant who are non-unionized, paid semi-monthly and are paid current, as identified in paragraph 10 of Covington's Affidavit and (b) all former employees who were paid in the same manner as the 1,360 existing employees identified in subsection (a).

2. Defendant shall provide Plaintiff with the names, addresses, email addresses and telephone numbers of all employees who potentially could be members of the FLSA Class electronically within twenty days of this order.

3. The court approves the notice (and accompanying consent form) provided by the parties post-argument.

IT IS SO ORDERED.