[Cite as *Oakley v. Ohio State Univ. Wexner Med. Ctr.*, 2018-Ohio-3606.]

| | |
|---|---|
| JAMES OAKLEY, et al. | Case No. 2017-00845JD |
| Plaintiffs | Magistrate Holly True Shaver |
| v. | DECISION OF THE MAGISTRATE |
| THE OHIO STATE UNIVERSITY WEXNER MEDICAL CENTER | |
| Defendant | |

{¶1} On January 22, 2018, plaintiffs filed a motion for conditional class certification and court-supervised notice to potential opt-in plaintiffs pursuant to 29 U.S.C. Section 216(b). On February 9, 2018, plaintiffs filed an "unopposed notice of supplemental evidence in support of their motion for conditional certification." With leave of court, on April 6, 2018, defendant filed a response in opposition. With leave of court, on April 30, 2018, plaintiffs filed a reply in support of their motion. On May 10, 2018, the court conducted a status conference with the parties. As a result of the conference, the parties filed Joint Exhibit 1 on May 14, 2018, which provides further detail regarding the time keeping policy at issue in this case.

{¶2} On July 2, 2018, plaintiffs filed a "second notice of supplemental evidence" in support of their motion. On July 13, 2018, defendant filed a response in opposition. On July 19, 2018, plaintiffs filed a motion for leave to file their previously submitted second notice of supplemental evidence. On July 23, 2018, defendant filed a response to the motion for leave. The court notes that the briefing period for plaintiffs' motion was closed as of April 30, 2018, and that the only additional material the court requested to be filed was Joint Exhibit 1. Accordingly, plaintiffs' motion for leave to file their second notice of supplemental evidence is DENIED. The court will now address plaintiffs' motion for conditional class certification.

**Factual background**

{¶3} Plaintiffs are employed by defendant's medical center in various positions, including as Registered Nurses, a Unit Clerk Associate, and an Electroneurodiagnostic Technician. Plaintiffs seek conditional class certification regarding their claims that they and other similarly-situated current and former hourly, non-exempt employees have not been paid for all time spent working due to defendant's practice and policy of improperly rounding the starting and stopping times of their shifts, in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. Sections 201, et seq. According to plaintiffs, defendant's hourly, non-exempt employees, are required to clock in and clock out for their shifts, which begin and end either at the top or middle of the hour. (Second amended complaint, ¶ 18; Motion, p. 6.) Defendant's hourly, non-exempt employees are also subject to defendant's "Clock-In and Clock-Out Rounding Policy." (Second amended complaint, ¶ 19; *See also* Joint Exhibit 1.) Employees' actual clock-in and clock-out times, as well as the rounded clock-in and clock-out times, are reflected on Punch Detail Reports that have been submitted to the court. (Motion, p. 6; affidavits of Oakley, Capehart, Lucas, O'Rourke, Woodward, and Rowe.)

{¶4} Defendant's hourly, non-exempt employees are also subject to Attendance Policy 02-22, which permits them to clock in or clock out up to six minutes prior to the start and up to six minutes after the end of their scheduled shifts. (*See* Exhibit E to plaintiffs' motion.) Specifically, Attendance Policy 02-22 states that: "Badge-in time will be **no sooner than** six minutes prior to the scheduled start time. Badge-out time will be **no later than** six minutes after the end of the shift." (Emphasis in original.) In addition, the Attendance Policy states that nonexempt staff members "are expected to report to their work location in appropriate attire by the start of their scheduled shift;" and, that tardiness is defined as "not being present in the department and available for work as determined by department schedules." *Id.* p. 2.

{¶5} Plaintiffs assert that defendant's Clock-In and Clock-Out Rounding Policy rounds to the nearest tenth of an hour, as permitted in 29 CFR 785.48(b), except for the

six minutes before and after the start and end of an employee's shift. In those circumstances, the employee's work time is always rounded to the start or end of a shift. The effect of the rounding policy is that if an employee clocks in during the six-minute window prior to his or her shift, that employee is not paid for any minutes worked during the six-minute, pre-shift window. Likewise, if the employee works a shift and clocks out during the six-minute window after the shift, the employee is not paid for any minutes worked during the six-minute, post-shift window. Thus, an employee could potentially work 8 hours and 12 minutes per day, but only be paid for 8 hours of work. Plaintiffs assert that defendant's rounding policy violates the FLSA in that it amounts to a systematic underpayment of its hourly, non-exempt employees.

{¶6} Plaintiffs seek an order from this court, pursuant to 29 USC 216(b), conditionally certifying a collective FLSA class defined as:

{¶7} "All current or former hourly, non-exempt employees of The Ohio State University Wexner Medical Center employed between October 18, 2014 and the present, who are or were subject to the 'Clock In and Clock Out Rounding Policy.'" (Motion, p. 3.)

{¶8} Plaintiffs also seek court approval of the proposed Court-supervised Notice to the Putative Class members, and ask for an order for defendant to identify potential opt-in plaintiffs within 14 days of the date of the certification order.

{¶9} In response, defendant urges the court to deny plaintiffs' motion for conditional class certification because the plaintiffs in the proposed collective class are not similarly situated. Defendant argues that the 22,000 employees who would comprise the proposed class worked in 90 locations in the State of Ohio, across 730 departments, in 311 different job positions, were supervised by hundreds of different managers and supervisors, and include both non-union employees and employees who were covered by three separate collective bargaining agreements. Defendant argues that plaintiffs have failed to make the requisite "modest factual showing" that they are

similarly situated to the thousands of employees in the proposed collective class. In addition, defendant asserts that its rounding policy is not, on its face, unlawful, and that the attendance policy is subject to managerial discretion. Thus, defendant argues that plaintiffs have failed to identify an unlawful policy that is common to all members of the putative collective action. Defendant also argues that many RNs are exempt from the FLSA under the learned professional exemption, and, as such, are not similarly situated to non-exempt employees in the putative collective action.

{¶10} In plaintiffs' reply, they argue that since defendant admits that the rounding policy and the attendance policy both apply to all putative class members, and since plaintiffs have submitted uncontroverted evidence showing that the rounding practice results in employees being systematically undercompensated, they have met the requirements for conditional class certification.

**Law and analysis**

{¶11} Under the FLSA, employees can sue on their own behalf and on behalf of "other employees similarly situated." 29 U.S.C. 216(b). The cause of action under the FLSA is known as a "collective action," as opposed to a class action under Civ.R. 23. In a collective action, the parties must "opt-in" to the cause of action. "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. 216(b).

{¶12} In addition, 29 CFR 785.48(b) states: "'Rounding' practices. It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, *provided that it is used in such a manner that it will not result,*

*over a period of time, in failure to compensate the employees properly for all the time they have actually worked.*" (Emphasis added.)

**Collective action standard**

{¶13} "Courts have discretion to conditionally certify a class for purposes of serving notice, but only 'in appropriate cases.'" *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Before a collective action can proceed, a court must determine whether the prospective opt-in plaintiffs are similarly situated. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). Courts generally use a two-stage approach to determine this issue. In the first stage, which takes place at the beginning of the discovery period, the standard for conditional class certification is "fairly lenient," and courts generally require only a "modest factual showing" that the plaintiffs' positions are similar to those of other employees. *Comer, supra*, at 546-7, quoting *Pritchard v. Dent Wizard Int'l*, 210 F.R.D. 591, 596 (S.D. Ohio 2002). Although courts are split as to what exactly plaintiffs must show at the first stage, courts should not grant conditional certification "unless the plaintiff[s] presents some evidence to support [their] allegations that others are similarly situated." *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 868 (S.D. Ohio 2005). "The court should consider 'whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; whether evidence of a widespread discriminatory plan was submitted, and whether as a matter of sound class management, a manageable class exists." *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 868 (S.D. Ohio 2011).

{¶14} In the second stage, the court makes a final determination on whether opt-in class members are similarly situated based upon a thorough review of the record after discovery is completed. *Schwab v. J.F. Bernard, Inc.*, No. 5:11CV1216, 2012 U.S. Dist. LEXIS 42971 (N.D. Ohio March 28, 2012). The final certification decision is based upon a variety of factors, including "factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject to, and the degree

of fairness and procedural impact of certifying the action as a collective action." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009). The final certification stage uses a stricter standard to determine whether class plaintiffs are truly similarly situated because courts have access to much more information after the close of discovery. *Comer*, *supra*, at 547, citing *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)). Although limited discovery has taken place in this case, the court shall use the first-stage standard to determine whether conditional certification is warranted.

**Similarly situated**

{¶15} Plaintiffs take a very broad view in their motion. Because both the rounding policy and the attendance policy apply to all non-exempt, hourly employees, plaintiffs argue that any employee at The Ohio State University Wexner Medical Center (OSUWMC) who was non-exempt and paid on an hourly basis is similarly situated in this matter, regardless of their job duties, supervisor, department, etc. Plaintiffs assert that defendant's rounding policy as it is applied to hourly, non-exempt employees violates the law. Thus, plaintiffs argue that all former and current hourly, non-exempt employees of defendant have been subjected to a "unified policy" of FLSA rounding violations and are "similarly situated" for purposes of their motion.

{¶16} "[A]t the notice stage, a determination that plaintiffs are similarly situated does not depend on the similarities of their job titles, descriptions, or duties, but rather if they suffered from a 'single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs.'" *Taylor v. Pilot Corp.*, No. 14-CV-2294, 2015 U.S. Dist. LEXIS 181385 (W.D. Tenn. June 16, 2015), citing *O'Brien, supra*, at 585. Accordingly, the court will begin its analysis by discussing the factors suggested in *Lewis v. Huntington Nat'l Bank,* 789 F.Supp. 2d 863, (S.D. Ohio 2011), *supra*, to determine whether plaintiffs are similarly situated.

**1) Whether potential plaintiffs were identified**

{¶17} In their second amended complaint, the 12 named plaintiffs are identified as employees of OSUWMC. The named plaintiffs include ten Registered Nurses (RNs), one Electroneurodiagnostic Technician (Channing Capehart), and one Unit Clerk Associate (Janet Noble). Plaintiffs have filed four other opt-in notices from additional employees, one of which is identified as another RN, but three of which have not identified what positions they have or had at OSUWMC.[1] (*See* February 21, 2018 consent forms of Janet Timmons, RN, and Jeri Hartley-Lewis; February 26, 2018 consent form of Angela Lynxwiler; March 1, 2018 consent form of Thomas Terry.) The RNs that are named plaintiffs are subject to a Collective Bargaining Agreement (CBA). On February 9, 2018, plaintiffs filed additional evidence to support their claims, including detailed time records for Megan Coffman, Kate Friedman, Zachary McGregor, Janet Noble, Erin O'Rourke, Richard Pesce, Kristine Stepanovsky, Tracy Woodward, Janet Timmons, and Jeri Hartley-Lewis. In addition, plaintiffs obtained full and updated time records for plaintiffs James Oakley and Channing Capehart. Thus, the court finds that potential plaintiffs have been identified.

### 2) Whether affidavits of potential plaintiffs were submitted

{¶18} Plaintiffs filed affidavits of the following individuals with their motion for conditional class certification: James Oakley, who averred that after his attorney analyzed his payroll records and time punch detail reports, between July 6, 2016 and September 27, 2017, defendant's rounding policy resulted in a net loss to him of payment for approximately 582 minutes of compensable work time. (Motion, p. 27.) Capehart averred that after an analysis of his time records, defendant's rounding policy resulted in a net loss to him of payment for approximately 80 minutes of compensable work time from September 13, 2016 through September 12, 2017. (Motion, p. 41.) Richard Lucas submitted an affidavit, stating that he has been disciplined for clocking in

---

[1]The court notes that Janet Timmons filed an affidavit on April 30, 2018, wherein she identifies herself as an RN.

both one and two minutes after the start of his scheduled shift. He also averred that after analyzing his time records, he was not paid for 1,451 minutes of compensable work time from July 2, 2015 through December 9, 2017. (Motion, p. 194.) Erin O'Rourke filed an affidavit stating that she had been disciplined for clocking in one, two, three, four, five, and seven minutes after the start of her shift. (Motion, pp. 5 and 7 of 70.) Tracy Woodward filed an affidavit stating that she has been disciplined for clocking in one, two, three, four, five, and six minutes after the start of her shift. (Motion, p. 50 of 70.) Holly Rowe filed an affidavit stating that after analyzing her time records, defendant's rounding policy resulted in a net loss to her of payment of approximately 1,580 minutes of compensable worktime between July 3, 2015 and December 5, 2017. (Motion, p. 57 of 70). Thus, the court finds that affidavits of potential plaintiffs were submitted.

### 3) Whether evidence of a widespread discriminatory plan was submitted

{¶19} Plaintiffs assert that the Clock-In and Clock-Out Rounding Policy is a common policy, which causes a common harm, when it is paired with Attendance Policy 02-22, in that to comply with the attendance policy, an employee must clock in before their scheduled shift time. In a similar case, the United States District Court for the Eastern District of Texas, Marshall Division, discussed a rounding policy which allowed employees to clock in seven minutes before and clock out seven minutes past their scheduled shift start and end times, but implemented a rounding policy that rounded time to the nearest quarter hour, as permitted by 29 CFR 785.48(b). That court stated: "if hourly [Account Managers] strictly follow the seven-minute rule, the time they work before or after the shift will always be less than the half of fifteen minutes, and therefore will always be rounded down to zero instead of rounded up to the nearest quarter hour. Although HSG otherwise rounds recorded time to the nearest quarter hour, both up and down, strict enforcement of the seven-minute rule would result only in time being rounded down. Such, in the court's opinion, constitutes a preliminary showing that over

time the policy will result in systematic under-reporting.  *See* 29 CFR 785.48(b)." *Kelly v. Healthcare Servs. Group, Inc.*, 2014 U.S.Dist. LEXIS 99025, *17-18 (July 22, 2014.)

{¶20} On April 30, 2018, plaintiffs filed defendant's responses to interrogatory No. 6, wherein defendant states that "Attendance Policy 02-22 applies to all exempt and non-exempt OSUWMC employees, excluding faculty members and student employees, in all OSUWMC departments, but that each department has the discretion to (i) implement Attendance Policy 02-22 differently with respect to the employees in that department and (ii) to create separate department-specific attendance policies.

{¶21} Courts have found that "rounding policies that on average, favor neither overpayment nor underpayment of wages are permissible, while those that systematically undercompensate employees are unlawful." *Boone v. Primeflight Aviation Servs.*, 2018 U.S.Dist LEXIS 28000, citing *Hinterberger v. Catholic Health Sys.*, 299 F.R.D. 22, 52 (W.D.N.Y. Mar. 27, 2014.)  *See also Binissia v. ABM Indus.*, No. 13 C 1230, 2014 U.S. Dist. LEXIS 24160, at *16 (N.D. Ill. Feb. 26, 2014) (rounding policy that "rounded up to fifteen minutes for pre-shift work but allowed only a five minute grace period if an employee arrived late" was not facially neutral and appeared to be inconsistent with FLSA regulations.)

{¶22} Defendant's Clock-In and Clock-Out Rounding policy appears to be facially neutral.  For example, an employee who clocked in during the six-minute window after a shift start time would benefit from the rounding policy in that the clock-in time would round to the shift start time, thereby granting the employee compensation for time not actually worked.  In addition, an employee who clocked out during the six-minute window prior to a shift end-time would likewise benefit from the rounding policy. However, Attendance Policy 02-22 states that badging in and out is not to occur outside of the designated times unless the staff member has prior authorization from his or her supervisor to be in an overtime status.  (Exhibit E to plaintiffs' motion.)  The attendance policy also states that tardiness occurs when an employee is not present in the

department and available for work as determined by department schedules; and, that if an employee is tardy eight or more times within a rolling six-month period, corrective action, up to and including termination could occur. (*Id.*) Plaintiffs argue that Attendance Policy 02-22 functions in a way that requires employees to clock in and out at certain times to avoid attendance-related discipline, and that compliance with the Attendance Policy results in clock-in and clock-out times that are consistently rounded in favor of defendant. Thus, plaintiffs assert that defendant's Clock-In and Clock-Out Rounding policy results in a systematic underpayment of hourly, non-exempt employees. Plaintiffs have provided examples of detailed time records as support for their argument that the majority of their clock-in and clock-out times were rounded in favor of defendant. (Motion, p. 8 and attachments thereto; Reply, Exhibits A1-5.)

{¶23} Plaintiffs also presented the affidavits of Lucas, O'Rourke, and Woodward who all averred that they had been disciplined for clocking in during the six-minute window after their shift start times. This evidence shows that although the rounding policy may be facially neutral, if an employee tries to benefit from the rounding policy by clocking in up to six minutes late, the attendance policy imposes discipline for being tardy. Consequently, plaintiffs assert that employees typically clock in prior to their shift start time in order to comply with the attendance policy, so any benefit to employees from a facially neutral rounding policy does not occur.

{¶24} In response, defendant has brought forth evidence to show that the attendance policy is not uniformly enforced to support its argument that plaintiffs are not similarly situated. Specifically, in defendant's response in opposition to plaintiffs' motion for conditional certification, defendant provided the affidavit of Michael Ball, an attorney for defendant, who averred that he took the depositions of plaintiffs Pesce, Woodward, Stepanovsky (all RNs), and Capehart, an Electroneurodiagnostic Technician. Pesce testified that he had both clocked in late and clocked out early and was never

disciplined for it; and that he had clocked in prior to six minutes before his scheduled shift and had not been disciplined.  (Pesce depo., pp. 61-62.)

{¶25} Woodward testified that the shifts in her department at The James Hospital had a 30-minute overlap, so if an employee had finished their work and the next nurse was there, the employee could leave up to six minutes early. (Woodward depo., p. 47). Woodward also testified that clocking in one minute late was considered being tardy. (*Id.*, pp. 67, 75.)

{¶26} Stepanovsky testified that regarding the STAT department, the rules were not to clock out more than six minutes after a shift, not to leave more than three minutes early, not to clock in more than 6 minutes early, and one minute late was considered tardy. (Stepanovsky depo., pp. 77, 81.)

{¶27} Capehart testified that being one minute late is considered tardy, that he could arrive to work any time between 6:30 and 7:00; and that he was free to clock in and out outside of the six-minute windows without discipline because his department was short-staffed. (Capehart depo., pp. 45, 74-75.)

{¶28} Defendant also filed the affidavits of several department managers who aver that despite the attendance policy, the enforcement of it differs by department.  For example, an employee is not considered tardy unless 11 minutes late in the IT department (affidavit of Blevins); 7 minutes late is considered tardy in Sports Medicine Department (affidavit of Ganim); 15 minutes late and no notice constitutes tardy in outpatient ambulatory care (affidavit of Harsh); 15 minutes late repeatedly constitutes a tardy (affidavit of Swan); 7 minutes late considered tardy (affidavit of Turner).

{¶29} Upon review of the evidence submitted, the court finds that defendant's Clock-In and Clock-Out Rounding Policy is facially neutral.  The court also finds that although the attendance policy applies to all of defendant's hourly, non-exempt employees, it is not uniformly enforced.  Accordingly, the court finds that the evidence submitted does not demonstrate a widespread, discriminatory plan.  Arguably, although

the plaintiffs who are subject to discipline when tardiness is considered clocking in one to six minutes late for the beginning of a shift may be similarly situated to one another, the plaintiffs who were not subject to a one to six-minute tardy policy would not be subject to that unified policy of violations.  The court finds that plaintiffs have failed to show that conduct in conformity with the attendance policy proves a violation as to all the plaintiffs, because if a plaintiff could leave six minutes early after clocking in six minutes early, there is no violation.  Similarly, if an employee could clock in six minutes late and not be disciplined for tardiness, the rounding policy benefits that employee and the attendance policy does not harm him or her.  Accordingly, the court finds that plaintiffs have failed to present evidence that conduct in conformity with both the rounding and the attendance policy proves a violation as to all the plaintiffs.  *See O'Brien, supra*, at 585.

### 4) **Whether as a matter of sound class management, a manageable class exists**.

{¶30} Plaintiffs allege that potentially 22,000 individuals could join this collective action.  Defendant asserts that the number is unmanageable due to the potential size of the class and the differences in managers and departments. Although large classes are not uncommon in collective actions, the fact that plaintiffs have failed to show that their claims are unified by common theories of defendant's statutory violations also prevent this collective action from being conditionally certified.   Accordingly, the magistrate recommends that plaintiffs' motion for conditional class certification be DENIED.

{¶31} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i).  If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed.  A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a*

*finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*


                                                HOLLY TRUE SHAVER
                                                Magistrate


**Filed August 8, 2018**
**Sent to S.C. Reporter 9/7/18**