64 P.3d 49 (2003)
115 Wash.App. 815
Larry MILLER and Michael Conrads, individually and on behalf of the Class, Respondents,
v.
FARMER BROS. CO., Appellant.
No. 49506-2-I.
Court of Appeals of Washington, Division 1.
February 24, 2003.
*52 Michael John Killeen, Michael Reiss, Jennifer Katherine Schubert, Jeffrey Bennett Youmans, Seattle, WA, for Appellant.
Roblin John Williamson, Williamson & Williams, Martin S. Garfinkel, Kristin Margret Houser, Schroeter Goldmark and Bender, Seattle, WA, for Respondents. *50
*51 COLEMAN, J.
Two former employees of Farmer Bros. Co. sued the company, alleging that it unlawfully failed to pay them overtime wages. The issue on review is whether the trial court abused its discretion in granting the employees' motion to certify a class that includes 29 members. We remand for reconsideration because the trial court failed to support its class certification decision with adequate reasoning, so it is unclear from the record whether the trial court's decision rested on tenable bases.

FACTS
Farmer is a business that uses "route sales representatives" to sell and deliver coffee and related products to restaurants and other commercial customers. Larry Miller and Michael Conrads are former employees of Farmer. In August 2000, Miller and Conrads jointly filed suit against Farmer in King County Superior Court. Their amended complaint alleges that they are entitled to overtime pay under the Minimum Wage Act, chapter 49.46 RCW (MWA) for all hours they worked over 40 per week while working as route sales representatives. Farmer filed an answer claiming that Miller and Conrads were exempt from overtime pay because they worked as outside sales agents as defined by RCW 49.46.010(5)(c).
Farmer is a California-based company that operates in Washington through branch offices in Seattle, Tacoma, Yakima, and Spokane. Route sales representatives are responsible for delivery of products to existing clients, as well as developing new clients. They are paid a base salary plus a monthly commission on new sales. Plaintiffs claim that they spent so much of their time delivering and stocking supplies for existing customers that they had insufficient time to develop new clients. They therefore claim they were unlawfully classified as outside sales agents when they essentially worked as delivery drivers.
The plaintiffs filed a motion for class certification pursuant to CR 23, seeking to represent a class of all current and former route sales representatives, as well as "trainees" who allegedly performed the same duties and were compensated with the same base salary. After oral argument, the trial court issued a letter indicating that because both named plaintiffs no longer worked at Farmer, the court intended to certify a class of only former employees unless plaintiffs added a current employee as a named plaintiff within 30 days. Plaintiffs failed to do so, and the trial *53 court certified a class defined as including "[a]ll persons who were employed by Farmer Bros. Co. in the State of Washington between August 8, 1997 and forty-five (45) days before trial, and who were classified as either route sales representatives and/or sales trainees during those periods."
At the time the trial court made its decision, the class contained 30 members. Since then, two members have opted out of the class while one person has quit Farmer and joined the class, resulting in a class numbering 29 at the time of briefing. Farmer sought, and this court granted, discretionary review of the trial court's class certification order.

DISCUSSION
A trial court's determination of whether to certify a class action is governed by CR 23. Plaintiffs moving for class certification bear the burden of demonstrating that they meet the requirements of that rule. See Doninger v. Pac. NW Bell, Inc., 564 F.2d 1304, 1311 (9th Cir.1977); Rex v. Owens ex. rel. Oklahoma, 585 F.2d 432, 436 (10th Cir. 1978). Where, as here, class certification is sought at the early stages of litigation, courts generally assume that the allegations in the pleadings are true and will not attempt to resolve material factual disputes or make any inquiry into the merits of the claim. Smith v. Behr Process Corp., 113 Wash.App. 306, 320 n. 4, 54 P.3d 665 (2002) (citing Blackie v. Barrack, 524 F.2d 891, 901 n. 17 (9th Cir. 1975)). Courts may, however, go beyond the pleadings and examine the parties' evidence to the extent necessary to determine whether the requirements of CR 23 have been met. Oda v. State, 111 Wash.App. 79, 94, 44 P.3d 8, review denied, 147 Wash.2d 1018, 56 P.3d 992 (2002). Because class actions are a specialized proceeding available in limited circumstances, the trial court must conduct a "rigorous analysis" of the CR 23 requirements to determine whether a class action is appropriate in a particular case. Oda, 111 Wash.App. at 93, 44 P.3d 8 (quoting Gen. Tel. Co. v. Falcon, 457 U.S. 147, 160-61, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).
This court reviews a trial court's decision to certify a class for abuse of discretion. Oda, 111 Wash.App. at 90, 44 P.3d 8. A court abuses its discretion if its decision is based on untenable grounds or is manifestly unreasonable or arbitrary. Oda, 111 Wash. App. at 91, 44 P.3d 8. We generally review decisions certifying a class liberally and err in favor of certifying a class, since the class is always subject to later modification or decertification by the trial court. Oda, 111 Wash. App. at 91, 44 P.3d 8 (citing Brown v. Brown, 6 Wash.App. 249, 253, 492 P.2d 581 (1971)). But despite this deferential standard of review, CR 23 "does not contemplate automatic affirmance whenever a trial court certifies a class." Oda, 111 Wash.App. at 92, 44 P.3d 8. And we will reverse a class certification decision if the trial court made its decision "without appropriate consideration and articulate reference to the criteria of CR 23." Washington Educ. Ass'n v. Shelton Sch. Dist. 309, 93 Wash.2d 783, 793, 613 P.2d 769 (1980) [WEA] (emphasis added).
1. NUMEROSITY
Farmer first argues that the trial court abused its discretion in certifying the class because the employees failed to show that the 29-member class was large enough to make joinder impracticable. Although some portions of the record favor a finding of impracticability, some do not, and the trial court failed to make any findings or articulate its reasoning on this issue. We are therefore unable to conduct meaningful appellate review of the trial court's decision. We remand to the trial court with instructions to reconsider its decision and make an appropriate record of its analysis.
A class should only be certified where a plaintiff demonstrates that the proposed class "is so numerous that joinder of all members is impracticable." CR 23(a)(1). Although plaintiffs seeking to certify a class need not show that it would be impossible to join all of the members of the proposed class, they must show that it would be "extremely difficult or inconvenient." Hum v. Dericks, 162 F.R.D. 628, 634 (D.Haw.1995). As a general rule, where a class contains at least 40 members, federal courts have recognized a rebuttable presumption that joinder is impracticable. *54 See Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir.1986), cert. denied, 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986); Chandler v. Southwest Jeep-Eagle, Inc., 162 F.R.D. 302, 307 (N.D.Ill.1995). Accord, 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 3.05 (3d ed.1992). Other sources have stated that a class having between 25 to 30 members raises a presumption of impracticability of joinder. See, e.g., EEOC v. Printing Indus. of Metro. Washington, D.C., Inc., 92 F.R.D. 51, 53 (1981) (citing 1 Newberg § 1105b, at 174).
There is, however, no converse presumption that classes under a certain size should not be certified. 1 Newberg at § 3.06. But see Cox, 784 F.2d at 1553 ("while there is no fixed numerosity rule, `generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'") (quoting 3B Jay William Moore, Federal Practice ¶ 23.05[1], at n. 7 (1978)).[1] Rather, the size of a small class should be considered in conjunction with other factors, including "judicial economy arising from the avoidance of multiplicity of actions, geographic dispersement of class members, size of individual claims, financial resources of class members, the ability of claimants to institute individual suits, and request for prospective injunctive relief which would involve future class members." 1 Newberg § 3.06 at 3-27, 3-28. Accord, Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp., 149 F.R.D. 65, 73-74 (D.N.J. 1993). "The determination of whether or not a class is large enough to maintain an action under Rule 23(a) must be made `in light of the particular circumstances of the case and generally, unless abuse is shown, the trial court's decision on this issue is final.'" Arkansas Educ. Ass'n v. Board of Educ., 446 F.2d 763, 765 (8th Cir.1971) (quoting 3 Jay William Moore, Federal Practice ¶ 23.05, at 3422 (2d ed.1964)).
In this case, some factors appear to favor certification and some do not.[2] But absent any findings or reasoning by the trial court, the record is insufficient at this stage for us to determine whether the trial court's decision rested on tenable bases. We are certainly unable to verify whether the court conducted the "rigorous analysis" required under CR 23(a). Oda, 111 Wash.App. at 93, 44 P.3d 8; WEA, 93 Wash.2d at 793, 613 P.2d 769. We therefore remand for the trial court to reconsider whether respondents can carry their burden of showing impracticability of joinder. The court should support its findings and conclusions regarding class certification by "articulate reference" to the requirements of CR 23. WEA, 93 Wash.2d at 793, 613 P.2d 769.[3]
*55 2. PREDOMINANCE OF COMMON ISSUES
Farmer also argues that because the legal issues raised in the complaint turn on individualized factual inquiries that must be resolved on a person-by-person basis, the plaintiffs failed to demonstrate the existence of predominate common issues under CR 23(a)(2) and (b)(3). Again, the trial court failed to support its conclusion on this issue with the required analysis and reference to the rule's criteria. But in the interests of judicial economy and in order to guide the parties and the court on remand, we examine the issue below and conclude that the requirements of commonality and predominance are met in this case.[4]
A party seeking to certify a class must demonstrate that "there are questions of law or fact common to the class[.]" CR 23(a)(2). Certification under CR 23(a)(2) is not justified merely because class members share a legal theory of recovery. In addition, some courts have expressed reluctance to certify a class where individualized proof is required to resolve an allegedly common issue, see Kurczi v. Eli Lilly & Co., 160 F.R.D. 667, 673 (N.D.Ohio, 1995), or when the resolution of a common legal issue is dependent upon highly specific factual and legal determinations that will be different for each class member. See Liberty Lincoln, 149 F.R.D. at 76.
It is not necessary, however, that the shared questions of law or fact be identical. Brown, 6 Wash.App. at 255, 492 P.2d 581. Rather, commonality exists when the legal question "`linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.'" Yslava v. Hughes Aircraft Co., 845 F.Supp. 705 (D.Ariz.1993) (quoting Wakefield v. Monsanto, 120 F.R.D. 112, 116 (E.D.Mo.1988)). The requirement is met if the "course of conduct" that gives rise to the cause of action affects all the class members and at least one of the elements of the cause of action is shown by all class members. Lockwood Motors, Inc. v. Gen. Motors Corp., 162 F.R.D. 569, 575 (D.Minn. 1995).
Here, the underlying issue is whether former sales representatives were properly characterized as exempt under the "outside salesman" overtime exemption in RCW 49.46.010(5)(c). To qualify, an employee must be "customarily and regularly engaged" in sales activity. WAC 296-128-540(1). In addition, employees may not be denied overtime under this exception if they spend more than 20 percent of the average nonexempt employee's work week performing duties unrelated to sales, although "incidental deliveries and collections" may be counted as exempt work. WAC 296-128-540(2).
Farmer argues that a class action lawsuit is inappropriate in this case because the declarations show that employees in the class allocate their time differently between sales and nonsales duties. This argument is not persuasive. Farmer classified all of the class members as exempt and thereby failed to pay them overtime. This common "course of conduct" is sufficient to satisfy the commonality requirement of CR 23(a). The fact that some employees within the class spent more time making sales contacts than the declarants who supported class certification *56 might affect the merits of the claim, but it does not defeat commonality.
Likewise, the trial court was justified in concluding, under CR 23(b)(3), that common issues predominate over individual ones. This requirement is somewhat more stringent than the CR 23(a) commonality requirement, but it involves a similar inquiry. The difference is that CR 23(a) is satisfied by the mere existence of a common legal or factual issue, whereas CR 23(b)(3) requires that common legal and factual issues predominate over any individual issues. But the predominance requirement is not defeated merely because individual factual or legal issues exist; rather, the relevant inquiry is whether the issue shared by the class members is the dominant, central, or overriding issue shared by the class. 1 Newberg, supra, § 4.25, at 4-85. Further, "[a] single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." 1 Newberg, supra, § 4.25, at 4-84. And the fact that those individual issues might take some time to resolve does not defeat predominance because courts have a number of methods for dealing with individual issues in class litigation. See 1 Newberg, supra, § 4.25, at 4-83 (noting that "the predominance test does not involve a comparison of court time needed to adjudicate common issues weighed against time needed to dispose of individual issues.") (footnote omitted); see also 1 Newberg, supra, § 4.26, at X-XX-X-XXX (discussing methods trial courts use to resolve individual issues rather than denying class certification at outset).
Although the amount of time each class member spent engaged in sales activity might have varied, the overriding issue in this case is whether Farmer violated the MWA by classifying delivery drivers as sales agents. That question will be answered by determining whether, under WAC 296-128-540(2), delivery was "incidental" to sales or vice-versa. This is the predominant issue shared by all the members of the class.
Farmer's reliance on federal wage and hour cases is misplaced. For example, in Morisky v. Pub. Serv. Elec. & Gas Co., 111 F.Supp.2d 493 (2000), the court held that commonality and predominance were not demonstrated by plaintiffs who claimed to represent a class of people within the same salary grade who were improperly exempted from overtime. But in Morisky, the court noted that there was no showing that the named plaintiffs' job duties were the same or similar to the proposed class members; the only thing the class members had in common was that they were all paid within the same salary grade by the same company and claimed to have been denied overtime. Morisky, 111 F.Supp.2d at 498. By contrast, in this case the class members all fit within two job descriptions and performed the same basic duties.
This case is more similar to Scott v. Aetna Servs., 210 F.R.D. 261, 267 (D.Conn.2002). In Scott, a class of systems engineers sued their employer for overtime, alleging they were erroneously classified as exempt under an exception for executive, administrative, or professional employees. Scott, 210 F.R.D. at 263. The court held that the commonality and predominance requirements were met because the plaintiffs' duties were similar, although each engineer spent his or her time on "somewhat different specific assignments." Scott, 210 F.R.D. at 265. That court distinguished Morisky on the basis that the proposed class in Morisky "included a range of administrative, supervisory, and technical employees ... and the similarity between the plaintiffs lay primarily in their `salary grades.'" Scott, 210 F.R.D. at 265. In Scott, as here, the plaintiffs satisfied the predominance requirement because documents obtained from the employer defined the class members' general duties as the same, and "whether [the employer] acted improperly in classifying the plaintiffs is the common liability issue that predominates over all other factual and legal issues." Scott, 210 F.R.D. at 267.
This is not to say, however, that individual variations in time spent conducting sales activities are irrelevant to the court's class certification analysis. On the contrary, such variations are extremely relevant to the trial court's determination of whether a class action is the superior means of adjudicating the dispute. That issue is addressed in the following *57 section of this opinion. But to invalidate this class on the basis of predominance or commonality would practically preclude class certification for any similar claim under the MWA, since any group of employees claiming they were illegally classified as exempt will inevitably have some variations in their job duties. Such a reading of the predominance requirement would contravene the clear policy in this state that CR 23 should be read liberally in the interest of judicial economy. See Behr, 113 Wash.App. at 318, 54 P.3d 665 (citing Brown v. Brown, 6 Wash.App. 249, 253, 492 P.2d 581 (1971)).
The plaintiffs have demonstrated that the class members share common issues of law and fact, and those common issues predominate over individual issues. Accordingly, although the trial court should have articulated its reasoning with reference to the criteria set forth in CR 23(a)(2) and CR 23(b)(3), the record supports the trial court's decision on this issue.
3. SUPERIORITY
In addition to requiring that common issues predominate, CR 23(b)(3) also instructs the trial court to decide whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In making this determination, the rule further directs the trial court to consider factors including:
(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.
CR 23(b)(3). This is a highly discretionary determination that involves consideration of all the pros and cons of a class action as opposed to individual lawsuits.
In this case, several factors suggest a class action would be superior, and several do not. For example, where individual claims of class members are small, a class action will usually be deemed superior to other forms of adjudication. 1 Newberg, supra, § 4.27, at 4-109, 4-110; but see Mayo v. Sears, Roebuck & Co., 148 F.R.D. 576, 583 (S.D.Ohio 1993) (finding availability of statutory attorney fees weighed against superiority).[5] If, however, the trial court were to agree with Farmer's argument that the class members' job duties varied too much to be established by representative testimony, the advantages of the class action vehicle would all but disappear, and it would be difficult to justify class certification.
But the trial court failed to make any record indicating that it even considered these factors or weighed the benefits of a class action suit against alternative means of adjudicating this dispute. Cf. 1 Newberg, supra, § 4.27, at 4-109. See also National Conference of Commissioners on Uniform State Laws, Uniform Class Actions Act, § 3(a)(6) ("the court shall consider, and give appropriate weight to ... whether other means of adjudicating the claims and defenses are impractical or inefficient[.]"). Although the court might have had tenable bases for a finding of superiority, the record is insufficient for us to determine whether the court acted within its discretion. Again, we remand for the trial court to reconsider its decision in light of the CR 23 factors taking additional evidence if necessaryand to make an adequate record of its decision.

CONCLUSION
We reverse the order granting class certification and remand the case to the trial court for further proceedings consistent with this opinion.
WE CONCUR: AGID, ELLINGTON, JJ.
NOTES
[1] There is no "magic number" that satisfies the CR 23(a) impracticability requirement. Hum, 162 F.R.D., at 634. Rather, the number of class members is but one factor courts consider. Compare Arkansas Educ. Ass'n v. Board of Educ., 446 F.2d 763, 765 (8th Cir.1971) (certifying class with only 20 members) and Dale Elecs., Inc. v. R.C.L. Elecs., Inc., 53 F.R.D. 531, 534 (D.N.H. 1971) (certifying 13-member class where location of defendant in class made joinder "not only impracticable, but impossible") with Hum, 162 F.R.D., at 634 (denying certification of class with "200 potential and 39 likely" members who all lived in small state of Hawai'i).
[2] The parties agree that six of the class members live outside Washington and one of the named plaintiffs has moved out of the country. Further, all the employees in the class worked at four branch locations that are dispersed throughout the relatively large state of Washington. But the record does not reflect where all the class members live now because the last known addresses for the class members have been redacted. In addition, although the plaintiffs argued to the trial court that each class member's claim was "relatively modest" and the trial court could have taken judicial notice that such is usually the case, there is no actual evidence in the record to establish the amount of damages each plaintiff would seek individually. Further, while the pay scales for the relevant job descriptions are contained in the record, there is no evidence of the current financial means of individual class members. The trial court may also consider other factors, such as the fact that additional class members could be added as employees leave the company up to the cutoff date 45 days before trial. Although Farmer correctly points out that this court must consider the class as it was presented to the trial court, the possibility of a growing class was certainly a factor the court could consider in determining whether to certify a class at this stage of litigation. All of these considerations should be taken into account on remand.
[3] On remand, the trial court may call for additional evidence so that the court can conduct the detailed analysis required under CR 23. See Oda, 111 Wash.App. at 93, 44 P.3d 8. Although there is no per se requirement that a trial court hold an evidentiary hearing in making a CR 23 determination, appellate courts in this state and in other jurisdictions have repeatedly suggested that such hearings are preferred and, in some instances, may be necessary. See Oda, 111 Wash.App. at 92, n. 4, 44 P.3d 8 (citing Merrill v. S. Methodist Univ., 806 F.2d 600, 608 (5th Cir. 1986) and Hartman v. Duffey, 19 F.3d 1459, 1473 (D.C.Cir.1994)). In this case, the trial court considered documentary evidence and oral argument before severing the class. We note, however, that the numerosity issue took on a very different nature once the class was limited to its current size. Additional evidence, therefore, could be helpful to the court in conducting the required analysis under CR 23.
[4] Plaintiffs suggest that because the ruling granting discretionary review noted that numerosity was the only issue meriting review, we should not consider the other issues raised by Farmer. But the Supreme Court has held that when the Court of Appeals grants discretionary review, it may not limit its review to particular issues. Right-Price Recreation, LLC v. Connells Prairie Community Council, 146 Wash.2d 370, 380, 46 P.3d 789 (2002). This court, therefore, has a duty to review all issues properly preserved, raised, and briefed on appeal.
[5] Although double damages and attorney fees are available for MWA claims under RCW 49.46.090 and 49.52.070, a minimal claim might still deter a plaintiff from going through the trouble of finding an attorney and filing suit or deter an attorney from taking a case on a contingency fee basis. Explicit findings on this issue are necessary, however, for proper review of this case.