# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| TRAVIS WORLEY and ANDREW HAMRY, on their own behalf and on the behalf of all others similarly situated, | No. 54900-0-II |
| Respondents/Cross-Petitioners, | |
| v. | UNPUBLISHED OPINION |
| CEDAR RECYCLING INC., a Washington Corporation, VALLEY RECYCLING INC., a Washington Corporation, BURT GILLELAND, and/or his marital community, and ANGELA LEE, and/or her marital community, | |
| Petitioners/Cross-Respondents. | |

LEE, J. — Travis Worley and Andrew Hamry (collectively Class Representatives) sought class certification for a class of employees against Cedar Recycling, Inc., Valley Recycling, Inc., Burt Gilleland, and Angela Lee (collectively Cedar/Valley) for failure to pay overtime wages, failure to pay wages for off-the-clock work, failure to provide rest and meal breaks, and willful withholding of wages. The trial court certified the class only for the rest and meal breaks claim, finding the other claims failed to meet the typicality requirement for class certification.

Cedar/Valley appeals the trial court's decision, arguing that the commonality, typicality, adequacy, predominance, and superiority requirements for class certification were not met for the

rest and meal breaks claim. Cedar/Valley also argues that the class definition must be amended because the class period is open-ended.

Class Representatives cross-appeal the trial court's decision, arguing that the trial court failed to provide adequate factual findings on the typicality requirement in denying the overtime, off-the-clock, and willful withholding of wages claims. Class Representatives further argue that the trial court erred because the typicality requirement was met for the overtime, off-the-clock, and willful withholding of wages claims. Class Representatives also argue that the trial court erred in reaching the merits of the case and in accepting Cedar/Valley's declarations from current and former employees.

We hold that the trial court did not abuse its discretion in granting class certification for the rest and meal breaks claim and the class definition does not need to be amended. However, the trial court failed to provide adequate factual findings for the typicality requirement in denying Class Representatives' overtime, off-the-clock, and willful withholding of wages claims. Thus, we affirm the class certification of the rest and meal breaks claim, reverse the denial of class certification for the overtime, off-the-clock, and willful withholding of wages claims based on inadequate factual findings, and remand to the trial court to resolve the inadequate factual findings on typicality for the overtime, off-the-clock, and willful withholding of wages claims.

FACTS

Worley worked for Cedar Recycling from November 2016 to April 2017. Cedar Recycling dismissed Worley for insubordination and improper conduct on April 14, 2017.

On May 16, 2017, Worley filed a claim with the Washington State Department of Labor and Industries (L&I) after his termination because Cedar Recycling had yet to deliver his final

paycheck. Cedar Recycling attempted to send Worley a check with his final wages, but Worley did not receive it. At the beginning of July 2017, Cedar Recycling sent another check to Worley. On July 13, Worley withdrew his wage complaint with L&I.

A.     COMPLAINTS FILED

On July 19, 2017, Worley filed a complaint for damages against Cedar Recycling and Jerald Eck[1] for "failure to timely pay wages" and for "willful withholding of wages." Clerk's Papers (CP) at 512. Worley claimed that Cedar Recycling had refused to deliver his final paycheck and that the failure to pay was willful.

On August 20, 2018, Worley filed a first amended complaint for damages against only Cedar Recycling. Worley added claims for "failure to provide paid rest breaks," "failure to pay overtime wages," and "failure to keep accurate payroll and work records." CP at 517. Worley asserted that he frequently worked more than 40 hours per week. When Worley worked more than 40 hours per week, Cedar Recycling would require him to fill out a false timecard that stated he only worked 40 hours. Cedar Recycling would then pay any overtime worked in cash at Worley's regular rate. Worley further asserted that Cedar Recycling failed to provide Worley with a ten-minute rest break for every four hours worked and did not pay Worley when he missed those rest breaks.

---

[1]     Eck was the previous owner of Cedar Recycling, Inc.

3

On February 6, 2019, Worley filed a second amended complaint for damages against Cedar Recycling, Valley Recycling, [2] Burt Gilleland,[3] and Angela Lee.[4] Worley's second amended complaint sought damages on behalf of all others similarly situated. Worley added claims that Cedar/Valley had "engaged in systemic policies, practices, and procedures of willfully failing to pay all wages" to employees for rest breaks that were not taken, overtime hours worked, and time worked off the clock.

On May 2, Worley filed a third amended complaint for damages against Cedar/Valley. Worley did not add any claims to this complaint.

On October 3, Worley filed a fourth amended complaint for damages against Cedar/Valley. Andrew Hamry joined the action as a class representative. Hamry worked for Valley Recycling from August 2014 to April 2015 and from March 2016 to June 2016. Hamry claimed that Valley Recycling required him to show up 15 minutes early to work and he often worked beyond 5 p.m. However, this was not reflected on his timesheets, and he was usually not paid for any overtime hours worked. When Hamry was paid for overtime hours, he was told to fill out a separate time sheet that reflected only 40 hours of work in a week and was then paid in cash at his regular hourly rate. Hamry also claimed that Valley Recycling did not "furnish or encourage" him to take a ten-minute rest break for every four hours worked or 30-minute meal breaks for every five hours

---

[2] Worley claims that Cedar Recycling and Valley Recycling are joint employers. Though this point is disputed, it is not raised on appeal.

[3] Worley identified Gilleland as a "governing person" for Cedar/Valley and alleged that Gilleland was responsible for paying wages to the class members. CP at 526.

[4] Worley identified Lee as the vice president of operations at Cedar Recycling and alleged that she was also responsible for paying wages to the class members.

4

worked. CP at 568. Hamry claimed that, like Worley, he did not receive wages for work he performed for his final paycheck before he terminated his employment with Valley Recycling.

B.    DISCOVERY

1.    Written Discovery

Worley served Cedar/Valley a first set of interrogatories with requests for production. When asked what policies and practices they had for rest and meal breaks, Cedar/Valley responded that "all employees know they are entitled to meal and rest breaks, encouraged and expected to take them, and are responsible for taking them." CP at 147. Cedar/Valley also stated that "each employee [was] responsible for turning in a signed timecard that reflected the hours they worked." CP at 148.

In supplemental responses, Cedar/Valley claimed that employees were responsible "for signing and submitting their time cards on a weekly basis." CP at 139. The timecards were processed by Lee, who would pay the employees based on the hours recorded on the timecards. Further, Cedar/Valley reiterated that employees were responsible for taking their own rest and meal breaks, and were able to take these breaks as they saw fit. Cedar/Valley believed all employees took regular breaks and were paid for their time.

Worley served Cedar/Valley a second set of interrogatories with requests for production.[5] With regard to rest and meal breaks, Cedar/Valley stated they did not "have any written policies" and that employees could take breaks "as they see fit." CP at 153.

---

[5] These requests were served after Eck passed away in 2017, and was removed as a defendant. Gilleland became owner of Cedar Recycling and Valley Recycling after Eck's death.

2.      Depositions

a.      Gilleland

Gilleland was deposed twice, in January 2019 and in October 2019. At the January 2019 deposition, Gilleland stated that the same overtime and rest and meal break policies applied to all employees. When asked what the rest break policy was, Gilleland responded, "If you want to take a break, take a break." CP at 109. Gilleland had a similar response when asked what the meal break policy was, stating, "If you want to take a lunch, take a lunch." CP at 110.

Gilleland also stated that employees who did not take a lunch would write it on their timecard and get paid for that time. Gilleland never had any employee, including Worley, complain about missing rest or meal breaks. Gilleland further stated that he had met Worley, but did not remember when they met or in what context they met.

At the October 2019 deposition, Gilleland explained the process of how the hourly employees were paid. He stated, "They would turn a card time card [sic] in, sign it, it would get sent to [Lee] for a pay check, and the pay checks would come back to them." CP at 80. Every employee tracked their own time and were paid in the same way.

When asked how people knew to take their lunch breaks, Gilleland responded, "Everybody just knows." CP at 85. Gilleland stated that he did not schedule lunches for employees. If an employee wrote on their time card that they worked from 9:00 a.m. to 5:00 p.m., Cedar/Valley would assume that the employee ate lunch "on site." CP at 84. Later, Gilleland stated that if an employee worked through their meal break, "I would think they would say something." CP at 97

Gilleland was further asked about the rest break policy. He stated that employees take two 15-minute breaks whenever they want. Gilleland did not schedule rest breaks for employees.

When asked whether employees would write on their time card if they missed rest breaks, he responded, "People always get their rest breaks." CP at 86. When asked how he knew that, he said, "It's just nature." CP at 86

In discussing overtime, Gilleland stated that he tried to avoid overtime and if an employee worked late one day, Cedar/Valley would schedule them early the next day. CP at 87. Gilleland denied ever paying his employees their wages in cash. He further stated that any overtime would be reflected in an employee's paystub.

Class Representatives inquired about declarations signed by current and former employees on Cedar/Valley's behalf. Gilleland stated that many employees came to him, but that he contacted many employees as well. Gilleland did not inform the employees of their rights regarding rest and meal breaks before asking them to sign the declarations. He also did not inform the employees that signing the documents could affect their legal rights and that their interests might be adverse to his. Gilleland's attorney drafted the documents. Gilleland stated that each declaration was individualized.

b. Shepherd

Class Representatives also deposed Jamie Shepherd. Shepherd worked for Valley Recycling for four weeks as a driver. Gilleland told Shepherd when she began working that "for every two hours you got your break and lunch times." CP at 814. When she wanted to take a break, Shepherd would call dispatch and tell them she was taking a break. Shepherd stated that there were times when she had to sit and wait in her truck, so she would use that opportunity to take a rest break or lunch. Sometimes, she would not have a chance to take her lunch break.

However, she stated she got in trouble "a couple times" for not taking rest breaks. CP at 845. She never signed a waiver for her lunch breaks.

Shepherd also stated that she tracked her time using a sheet that she would write on. The person who trained her told her that she would get paid cash if she worked overtime. She never personally worked overtime and so only ever received checks.

Shepherd signed a declaration for Cedar/Valley. Shepherd did not write the declaration. She was asked to come in and told that if she agreed with everything on the declaration to sign it. Cedar/Valley also told her that "[i]f you don't, no hard feelings." CP at 830. Shepherd did not remember who asked her to sign the document. No one told her what the declaration was for or that signing the declaration may have been adverse to her own interests. Shepherd stated, "I just remember reading it and going, Well, none of this really pertains to me, so I signed it." CP at 831.

Shepherd stated that her husband went with her to sign the declaration. He worked for Cedar/Valley for "like, three or four days." CP at 832. He also signed the declaration because he said that it did not pertain to him.

### c. Worley

Cedar/Valley deposed Worley. Worley stated that he had not been a party to any other lawsuits or made any other wage claims outside of the L&I complaint against Cedar Recycling. Cedar/Valley showed Worley an exhibit of another lawsuit in which he was named. After being shown this exhibit, Worley changed his answer, stating, "I didn't realize this was a lawsuit." CP at 599.

Cedar/Valley asked Worley how he turned in his alleged accurate timecard versus his alleged inaccurate timecard. Worley responded that if his accurate timecard reflected more than

40 hours worked in a week, he would fill out a separate timecard that stated he only worked 40 hours that week. He would turn the inaccurate timecard in to payroll and bring the accurate timecard to Gilleland. Worley stated that when he worked overtime, he worked about two to four hours of overtime. Gilleland would then give Worley his overtime in cash. Worley never witnessed anyone else get their overtime in cash from Gilleland.

Worley admitted that he provided no documentation showing he was paid in cash, stating, "[T]here's no receipt for it." CP at 615. Worley also stated that he had photos of his accurate timesheets on his current phone. Worley later stated that the photos might have come from one of his older phones.

Cedar/Valley asked Worley to describe what Gilleland looked like. Worley stated that he had a shaved head, a long goatee, and was almost 6 feet tall.

Cedar/Valley also spoke with Worley about the other employees' complaints. Worley stated that "[o]ther people complained about going through the same things that I did." CP at 621. He also stated that he witnessed "James"[6] work more than 40 hours a week and that James mentioned that he was paid in cash for overtime hours worked, but Worley did not know whether James was paid at straight time or time and a half for those hours. CP at 623.

    d.    Hamry

Cedar/Valley also deposed Hamry. When asked whether he understood what it meant to be a class representative Hamry stated, "Not exactly." CP at 639.

Hamry admitted that certain statements in his declaration were false. Specifically, Hamry's declaration stated that he was a metal purchaser for the entirety of his employment with Valley,

---

[6] The record shows no full name for "James."

9

which was not true. Further, Hamry's declaration defined his job duty as "showing [customers] the metals that they wished to purchase," when, in reality, Hamry was being shown metals that customers wished to sell him. CP at 217.

Cedar/Valley also asked Hamry about his rest breaks. Hamry stated that he would take them "as the time [was] available, if [it was] available." CP at 643. No one told him not to take rest breaks, but sometimes Gilleland would tell him not to forget to take a break. Hamry claimed that generally, Valley Recycling failed to instruct him to take rest breaks. Hamry said he did not take his rest breaks because "there was always something to be done." CP at 650. Hamry did not have knowledge of any other employees that did not receive their rest breaks.

When asked about his meal breaks, Hamry stated he would "[t]ake them as—if time [was] available." CP at 645. Hamry was not sure if anyone instructed him to take meal breaks.

With regard to overtime, Hamry stated that he worked "until operations were closed." CP at 649. This was usually from around 9:00 am until 5:45 pm. Like Worley, Hamry would take his timesheets to the "owner" who would pay him cash for the overtime hours worked. CP at 939.

C. MOTION FOR CLASS CERTIFICATION

Worley and Hamry filed a motion for class certification, asking the court to designate them as class representatives and claiming that Cedar/Valley "willfully failed to pay overtime, provide and pay for breaks, and to pay employees for all hours worked." CP at 41. Worley and Hamry provided the following definition for the proposed class:

> All current and former non-managerial employees who worked for Cedar Recycling Inc. and Valley Recycling Inc. for any period of time from August 20, 2015, through final resolution of this matter, who were based or resided in the State of Washington during such employment.

CP at 42 (boldface omitted).

Gregory Wolk, Class Representatives' counsel, provided a declaration in support of the motion. He offered exhibits, including a copy of L&I investigation notes and an L&I complaint. Apparently, in September 2018, L&I investigated an allegation that Valley Recycling "[u]nder reported hours" and workers were paid "in check & cash." CP at 132. The investigation arose from a January 2017 L&I complaint filed by Crystal Burris, who claimed that Valley Recycling "repeatedly asked [her] to work overtime hours." CP at 135. Burris also asserted that she was paid straight time in cash for overtime worked. Wolk also offered two copies of timecards that showed employees took no lunch and did not indicate whether employees took breaks.

Wolk stated in his declaration that Worley and Hamry expressed to him that they were "committed to prosecuting this action on behalf of the class, have agreed to participate fully, and have already devoted efforts to that end." CP at 69. Further, Worley and Hamry had already "provided discovery" and agreed to "make themselves available for depositions." CP at 69.

Jeff Mead, a legal assistant for Class Representatives' counsel, also provided a declaration. Mead stated that he reviewed Cedar/Valley's payroll summaries for the class period. Mead found that, of a combined total of "4801 employee work weeks," Cedar/Valley only paid employees overtime on eight occasions. Further, of those employee work weeks, 3,452, or about 72 percent, recorded exactly 40 hours of work.

Worley also provided a declaration in support of class certification. In his declaration, Worley stated that he was not provided with or permitted to take ten-minute rest breaks for every four hours of work. Worley observed other employees being subjected to the same policies and practices.

11

Worley further stated that Cedar Recycling did not provide him with a 30-minute meal break for every five hours worked. He was unsure whether Cedar Recycling deducted 30 minutes of pay for every five hours of work, regardless of whether he took his meal break. Worley later "became aware" that other employees were treated the same way. CP at 207.

With regard to overtime hours, Worley stated that Cedar Recycling did not pay him for all overtime hours worked and never paid him at the time and one-half rate. He stated he typically worked five to ten hours of overtime per week. Worley provided photographs of his "true timesheets" that showed the actual overtime hours he worked. CP at 209 (capitalization omitted). Worley also provided a supplemental declaration stating he understood the duties required of a class representative.

Hamry also provided a declaration in support of class certification. Hamry claimed that he did not receive rest breaks and was "aware that others also did not receive all their rest breaks." CP at 217. Further, Valley Recycling did not pay Hamry for his missed rest breaks.

Hamry claimed that he did not receive 30-minute meal breaks and, when he did take a meal break, he was frequently required to end the meal breaks early. Hamry "became aware that other employees were likewise not provided with 30-minute meal breaks." CP at 218. With regard to overtime hours, Hamry claimed he was paid "straight cash for those hours, but not at the time and a half rate." CP at 218. Hamry also provided a supplemental declaration stating he understood the duties required of a class representative.

Worley and Hamry also provided declarations from nine former employees of Cedar/Valley. Each former employee stated that they did not receive rest breaks, and all but one

stated that they did not receive meal breaks. All but one stated they did not get paid time and a half for overtime hours worked.

One of the employees, Kayla Swanson, also provided a copy of an L&I complaint she filed in July 2016 against Valley Recycling. The complaint stated that Valley Recycling required employees to fill out two separate time cards—one for their paycheck and one for overtime. Overtime was then paid in cash, but not at the proper rate.

Cedar/Valley opposed class certification, arguing that Worley and Hamry did not meet any of the requirements of CR 23(a) or CR 23(b)(3). Cedar/Valley did not argue that the proposed class definition was open-ended and must be amended.

In support of their opposition to class certification, Cedar/Valley provided 62 declarations from current and former employees that denied all of the claims. Specifically, the declarations stated that when employees worked 8 hour shifts, they "always took two rest breaks of at least ten minutes, and, if [they] wanted, one meal break of at least 30 minutes." *E.g.* CP at 281, 284.

Gilleland also provided a declaration for Cedar/Valley. He stated there were a "limited number of instances" where Cedar/Valley paid overtime and they tried to avoid it as much as possible. CP at 468. Gilleland further asserted that he did not pay overtime in cash, nor did he pay overtime at straight time. With regard to rest and meal breaks, Gilleland stated he had no knowledge of employees missing breaks and encouraged employees to take breaks.

Lee also provided a declaration for Cedar/Valley. She stated that Cedar/Valley did not make payments for wages in cash. She also stated that she had no knowledge of employees not receiving rest or meal breaks. Lee provided a copy of an Employment Security Department's

determination showing that LaMarcus Ford, who submitted a declaration for Worley and Hamry, committed fraud when he filed for unemployment.

Shepherd also provided a declaration for Cedar/Valley. 2 CP 862; PDF 356. She stated that she "always took two rest breaks of at least ten minutes, and, if [she] wanted, one meal break of at least 30 minutes." CP at 862. She also stated that Cedar/Valley always encouraged her to take her rest and meal breaks. Further, she stated she never worked more than 40 hours a week at Cedar/Valley.

D. TRIAL COURT'S ORDER REGARDING CLASS CERTIFICATION

The trial court granted the motion for class certification as to the rest and meal break claim only. The trial court found that the common issue was "whether [Cedar/Valley] had a policy of adequately encouraging Class members to take meal and rest breaks or providing proper wage payments if breaks were not taken." CP at 1117.

The trial court stated it would grant certification for the rest and meal break claim because there was "no policy that [was] put into standard practice" for requiring employees to take their rest and meal breaks. Verbatim Report of Proceedings at 42. Further, while some employees stated they were encouraged to take breaks, it was not enforced in practice.

1. CR 23(a)

In its written decision, the trial court found that the Class Representatives satisfied the requirements for class certification under CR 23(a) for the rest and meal break claim. Numerosity was satisfied because the class consisted of more than 145 employees.

The trial court also found commonality as to all of Class Representatives' claims. The trial court relied on Cedar/Valley's 62 declarations from current and former employees affirming

Cedar/Valley's alleged practices, the nine additional declarations from former employees affirming Class Representatives' allegations, the L&I complaints against Cedar/Valley, Worley's deposition testimony, and the time and payroll records that showed Cedar/Valley "only paid overtime on 0.042% of the 4,801 paychecks they issued during the class period." CP at 1119. The trial court found commonality because Cedar/Valley "admit[ted] the Class members were all subject to the same practices." CP at 1120. The trial court further found that common questions of fact arose from Cedar/Valley's conduct.

Unlike commonality, the trial court found typicality as to only the rest and meal breaks claim. The trial court stated that the rest and meal breaks claim was typical "because they all arise from the same conduct of [Cedar/Valley] and are based on the same legal theories." CP at 1121. The trial court also found that "[t]he harm alleged from this allegation is of the same nature to all class members, though may differ among the members as to amounts." CP at 1121. The trial court then stated, "[Class Representatives have] shown typicality in relation to one claim, whether [Cedar/Valley] had a policy of adequately encouraging Class members to take meal and rest breaks during the relevant time period." CP at 1121. The trial court provided no explanation as to why typicality was not met for the overtime, off-the-clock, or willful withholding of wages claims.

The trial court also found that Worley and Hamry met the adequacy requirement for all claims. The trial court stated that their claims were "coextensive with and not antagonistic to the claims asserted on behalf of the Class." CP at 1121-22.

2.      CR 23(b)

The trial court found that the predominance and sufficiency requirements for certification under CR 23(b)(3) were met for all claims. According to the trial court, predominance was

15

satisfied because "common issues predominate over any individualized issues" based on the fact that the "common nucleus of this case is on the disputed existence of [Cedar/Valley's] uniform policies and practices" as it related to the meal and rest breaks. CP at 1123, 1122. The trial court stated that to prevail on the claims, Class Representatives must show that Cedar/Valley engaged in a pattern and practice of failing to pay overtime work at time and a half, failed to pay for missed breaks, and failed to make payment for all hours worked. The trial court also found that the variance in the amount of damages each class member was entitled to did not preclude class certification.

The trial court further found that the superiority requirement was met for all claims because "[j]oinder of all 145 employees would be inferior to class action," and "[i]t would be a burden on the court to manage the claims of more than 145 separate plaintiffs." CP at 1123. Also, 145 separate claims "would be a drain on judicial resources," while class action would "promote[] consistency and efficiency of adjudication." CP at 1123. The trial court stated that "the Court will not face any difficulties managing and resolving the case." CP at 1124.

And the trial court granted the proposed class definition. Finally, the trial court found that certification under RAP 2.3(b)(4) was appropriate but allowed the parties to seek discretionary review of any aspect of the class certification order. Both parties sought discretionary review of the trial court's order granting class certification for the rest and meal breaks claim, which this court granted.

ANALYSIS

A.    CEDAR/VALLEY'S APPEAL

1.    Class Certification

Cedar/Valley argues that the trial court abused its discretion by certifying the class for the rest and meal breaks claim.  We disagree.

a.    Legal principles

A trial court's decision to grant class certification is reviewed for abuse of discretion. *Moeller v. Farmers Ins. Co. of Wash.*, 173 Wn.2d 264, 278, 267 P.3d 998 (2011).  Abuse of discretion occurs when a decision is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'"  *Id.* (internal quotation marks omitted) (quoting *Mayer v. Sto Indus. Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006)).

"Class certification is governed by CR 23."  *Id.*  CR 23(a) enumerates four prerequisites to a class action:

> (1) the class is so numerous that joinder of all members is impracticable,[7] (2) there
> are questions of law or fact common to the class, (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the class, and (4) the
> representative parties will fairly and adequately protect the interests of the class.

CR 23(a).  Further, one of the three requirements of CR 23(b) must be met.  CR 23(b).  In this case, Class Representatives relied on CR 23(b)(3), which states:

> The court finds that the questions of law or fact common to the members of the
> class predominate over any questions affecting only individual members, and that
> a class action is superior to other available methods for the fair and efficient
> adjudication of the controversy.

---

[7]  Cedar/Valley does not argue that the numerosity requirement is not satisfied.

CR 23 is interpreted liberally. *Chavez v. Our Lady of Lourdes Hospital at Pasco*, 190 Wn.2d 507, 515, 415 P.3d 224 (2018). A trial court should err in favor of certification because a previously certified class is always subject to later modification or decertification by the trial court, and hence the trial court should err in favor of certifying the class. *Id*. The party moving for class certification carries the burden of establishing CR 23's requirements. *Weston v. Emerald City Pizza LLC*, 137 Wn. App. 164, 173, 151 P.3d 1090 (2007)

b.     Commonality

Cedar/Valley claims that CR 23(a)'s commonality requirement was not met for the rest and meal breaks claim. We disagree.

CR 23(a)(2) requires that there be "questions of law or fact common to the class." Commonality exists where "the defendant engaged in a 'common course of conduct in relation to all potential class members.'" *Id*. at 170 (internal quotation marks omitted) (quoting *Oda v. State*, 111 Wn. App. 79, 89, 44 P.3d 8, *review denied*, 147 Wn.2d 1018 (2002)). There is a low threshold to satisfy the commonality requirement. *Smith v. Behr Process Corp.*, 113 Wn. App. 306, 320, 54 P.3d 665 (2002).

Cedar/Valley relies on *Weston* in support. In *Weston*, Weston was a general manager at Emerald City Pizza (ECP) and classified as an exempt employee. *Weston*, 137 Wn. App. at 166. Because of this exemption, Weston was not paid overtime wages. *Id*. at 166-67. Weston claimed that he should have been classified as a nonexempt employee and paid overtime wages because the majority of his regularly performed duties were those of a nonexempt employee. *Id*. at 167.

Weston "requested that the trial court certify a class consisting of all current and former managers." *Id*. Weston claimed that the class members performed similar tasks due to ECP's

uniform policy of treating managers as exempt even though they perform mostly nonexempt duties. *Id*. at 170. The trial court granted class certification. *Id*. at 167.

On appeal, the court overturned the class certification because Weston had failed to provide any evidence, in the form of affidavits or otherwise, that managers were required to perform mostly nonexempt duties. *Id*. at 171-73. Instead, Weston merely alleged that all managers performed the same job duties as he did, worked substantially similar hours, were subject to the same policies and practices, held substantially the same supervisory authority, and did not receive overtime compensation. *Id*. at 173. ECP, on the other hand, submitted affidavits from 5 managers contradicting Weston's allegations, as well as questionnaire responses from 59 managers in which only 9 stated that they spent more than 50 percent of their time performing nonexempt tasks. *Id*. at 171-72. The court held that Weston failed to meet the burden of establishing CR 23's requirements. *Id*. at 173.

*Weston* is distinguishable. Unlike in *Weston*, Class Representatives provided evidence that Cedar/Valley engaged in a common course of conduct in relation to potential class members for the rest and meal breaks claim. Class Representatives provided declarations from Worley, Hamry, and nine other past employees stating they did not receive rest breaks, and all but one stated that they did not receive meal breaks. They all stated that they did not get paid for any missed breaks. Further, Cedar/Valley admitted that they did not have any written policies regarding rest and meal breaks. The only policies recited by Gilleland were "[i]f you want to take a break, take a break," and "[i]f you want to take a lunch, take a lunch." CP at 109-10.

The law requires an employer to "schedule breaks at regular intervals unless the 'nature of the work' allows employees to take intermittent rest periods" and to compensate its employees for

all missed breaks. *Chavez*, 190 Wn.2d at 517-18 (quoting WAC 296-126-092(4), (5)). Here, Class Representatives provided declarations that stated employees did not receive rest or meal breaks and did not get paid for missed breaks. Thus, the "dominant and overriding issue common to all putative class members is whether [Cedar/Valley] failed to ensure [employees] could take breaks" and get paid for missed breaks. *Id. at* 518. Therefore, because Class Representatives provided sufficient evidence to show commonality, the trial court did not abuse its discretion in finding that commonality was met with regard to the rest and meal breaks claim.

        c.     Typicality

Cedar/Valley claims that CR 23(a)'s typicality requirement was not met for the rest and meal breaks claim. We disagree.

CR 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." A claim "is typical if the same legal theory underlies all class members' claims." *Weston*, 137 Wn. App. at 170. Typicality is present if the evidence establishes that the class representative "could 'establish liability by using representative evidence to prove a pattern or practice of violations by the defendant with respect to the class.'" *Pellino v. Brink's Inc.*, 164 Wn. App. 668, 684, 267 P.3d 383 (2011).

Here, whether the class members were entitled to receive rest or meal breaks and be paid for any missed breaks underlies the class members' claim. Worley and Hamry both testified and provided declarations stating that they did not receive rest and meal breaks or get paid for missed breaks while working for Cedar Recycling. Class Representatives also provided declarations from nine past employees of Cedar/Valley, all of whom claimed they did not receive rest breaks and all but one of whom claimed they did not receive meal breaks. They all claimed they did not get paid

for missed breaks. Typicality is further supported by Cedar/Valley's admission that it did not have any written policies regarding rest and meal breaks. Thus, Class Representatives could establish liability by using representative evidence to prove a pattern or practice of violations by Cedar/Valley with respect to the class. The trial court did not abuse its discretion in finding that the typicality requirement was met with regard to the rest and meal breaks claim.

> d.      Adequacy

Cedar/Valley claims that Worley and Hamry are not adequate representatives of the proposed class because their credibility is undermined. We disagree.

CR 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." A class representative's credibility and integrity may be relevant, but the most important issue is still whether the representative's interests are antagonistic to those of the class members. *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 356 (N.D. Cal. 2018). Credibility may only render a class representative inadequate where "'attacks on the credibility . . . are so sharp as to jeopardize the interests of absent class members.'" *Id.* (quoting *Harris v. Vector Mktg. Corp.*, 753 F.Supp.2d 996, 1015 (N.D. Cal. 2010)). A court may find inadequacy "'where the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty, such as a criminal conviction for fraud.'" *Id.* (quoting *Harris*, 753 F.Supp.2d at 1015).

> i.      Worley

Cedar/Valley claim that Worley is not an adequate representative because he made contradictory and false statements.

21

Here, while Worley changed his answer regarding the number of overtime hours he worked during weeks he worked overtime from two to four hours to five hours, the difference between Worley's two answers could represent differences from week to week. Worley explained in his supplemental declaration that the hours were estimates from timecards of which he had record and he stated that the estimates varied based on the week. Worley stated that, on average, he worked between two and four hours of overtime per week. In addition, Worley's alleged false statements regarding prior litigation were apparently caused by his lack of understanding that his eviction was a lawsuit. None of Worley's alleged inconsistent or false statements are "so sharp as to jeopardize the interests of absent class members." *Arris*, 327 F.R.D. at 356 (quoting *Harris*, 753 F.Supp.2d at 1015). Thus, the trial court did not abuse its discretion in finding Worley to be an adequate representative for the class.

ii.      Hamry

Cedar/Valley claims that Hamry is not an adequate class representative because he did not know what it meant to be a class representative and admitted that facts in his affidavit supporting class certification were false.

Although Hamry made statements related to his job description and job duties that were not true, Hamry submitted a supplemental declaration that stated, "My previous declaration contains a mistake, where it says 'buy' when it should have said 'sell.'" CP at 999. Also, in the supplemental declaration, Hamry clarified that he understood and agreed to the obligations of being a class representative. Given the nature of the statements, Hamry's false statements are not antagonistic to the claims of the class members and do not jeopardize the interests of class members

22

because they do not touch on issues directly relevant to the litigation. Thus, the trial court did not abuse its discretion in finding Hamry to be an adequate representative for the class.

        e.      Predominance

Cedar/Valley claims that CR 23(b)(3)'s predominance requirement was not met for the rest and meal breaks claim. We disagree.

"CR 23(b)(3) requires the court to find that questions of law or fact common to the members of the class predominate over any questions affecting only individual members." *Moeller*, 173 Wn.2d at 279. Predominance is somewhat more stringent than the commonality requirement of CR 23(a), but it involves a similar inquiry. *Elter v. United Servs. Auto. Ass'n*, 17 Wn. App. 2d 643, 659, 487 P.3d 539, *review denied*, 198 Wn.2d 1027 (2021). "The difference is that CR 23(a) is satisfied by the mere existence of a common legal or factual issue, whereas CR 23(b)(3) requires that common legal and factual issues predominate over any individual issues." *Miller v. Farmer Bros. Co.*, 115 Wn. App. 815, 825, 64 P.3d 49 (2003).

The relevant inquiry for predominance is "whether the issue shared by the class members is the dominant, central, or overriding issue shared by the class." *Elter*, 17 Wn. App. 2d at 660 (quoting *Miller*, 115 Wn. App. at 825). We look to whether there is a common nucleus of operative facts. *Chavez*, 190 Wn.2d at 516. Predominance is not defeated "'merely because individual factual or legal issues exist.'" *Elter*, 17 Wn. App. 2d at 660 (quoting *Miller*, 115 Wn. App. at 825). Further, the difference in individual damages does not defeat predominance. *See id.*

Here, all employees were subject to the same rest and meal breaks policy. There was no written policy regarding breaks, but the unwritten policy was "[i]f you want to take a break, take a break," and "[i]f you want to take a lunch, take a lunch." CP at 109-10. Further, Worley, Hamry,

and nine other employees testified that they did not receive their rest breaks nor were they paid for missed breaks. All but one testified that they did not receive meal breaks.[8] Common questions of law and facts relating to the rest and meal breaks shared by the class members are dominant and stem from a common nucleus of operative facts.

While there may be differences in individual damages based on the hours an employee worked and an employee's tenure, this does not defeat predominance because "[t]rial courts have a 'variety of procedural options to reduce the burden of resolving individual damage issues, including bifurcated trials, use of subclasses or masters, pilot or test cases with selected class members, or even class decertification after liability is determined.'" *Chavez*, 190 Wn.2d at 521 (quoting *Sitton v. State Farm Mut. Auto. Ins. Co.*, 116 Wn. App. 245, 255, 63 P.3d 198 (2003)). The trial court did not abuse its discretion in finding that Class Representatives met the predominance requirement.

        f.      Superiority

Cedar/Valley argues that Class Representatives failed to meet CR 23(b)(3)'s superiority requirement. We disagree.

CR 23(b)(3) requires that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy." The determination of whether this requirement is met is highly discretionary. *Miller*, 115 Wn. App. at 828.

---

[8] Cedar/Valley submitted 62 declarations denying the claim that employees did not receive their rest and meal breaks, but those declarations do not speak to whether the issues relating to the rest and meal breaks claim shared by the class members dominate and stem from a common nucleus of operative facts.

CR 23 (b)(3) sets forward four factors to consider in determining superiority. *Chavez*, 190 Wn.2d at 514-15. The first factor looks to each member's interest in "individually controlling the prosecution or defense of separate actions." CR 23(b)(3)(A). "Where individual damages are small, the class vehicle is usually deemed superior." *Chavez*, 190 Wn.2d at 523. And individuals have an interest in litigating as a group where a common nucleus of operative facts exist. *Id*. The second factor considers "the extent and nature of any litigation concerning the controversy already commenced." CR 23(b)(3)(B). The third factor concerns the desirability "of concentrating the litigation of the claims in the particular forum." CR 23(b)(3)(C). Generally, employees are reluctant to sue their employers; therefore, class actions are likely the only way the employees' rights can be vindicated. *See Chavez*, 190 Wn.2d at 524. The fourth factor looks to the "difficulties likely to be encountered in the management of a class action." CR 23(b)(3)(D).

With regard to the first factor, the class members' interest in individually controlling the prosecution of separate actions is low because the individual employees' damages are small, generally consisting only of wages owed for missed rest and meal breaks. Further, a common nucleus of facts exists because all employees in the class were subject to the same policy and practice as one another, making it easier for the employees to adjudicate their claims together.

With regard to the second factor, nothing in the record indicates that there was any other "litigation concerning the controversy" that had already commenced. *See* CR 23(b)(3)(B).

With regard to the third factor, it is desirable to concentrate the claims in a class action because the class contains 145 members and "joinder is impracticable where a class contains at least 40 members." *Chavez*, 190 Wn.2d at 520. Class members may further desire the

concentration of the litigation in the class action form, because, as employees, they may be reluctant to sue their employers individually out of fear of retaliation.  *See id.* at 524.

And for the fourth factor, management of the class should not be difficult despite differences in damages as "representative testimony and trial bifurcation could be used to manage the individual issues relating to damages."  *Id.* at 522.  And the trial court acknowledged that it "will not face any difficulties managing and resolving the case."  CP at 1124.  The trial court did not abuse its discretion in finding that the highly discretionary superiority requirement was met.

2.      Class Definition

Cedar/Valley argues that the class definition must be amended because it is open-ended. Class Representatives argue that Cedar/Valley waived this claim because they are raising it for the first time on appeal.  We agree with Class Representatives.

We "may refuse to review any claim of error which was not raised in the trial court."  RAP 2.5(a).  "'The appellate courts will not sanction a party's failure to point out at trial an error which the trial court, if given the opportunity, might have been able to correct to avoid an appeal and a consequent new trial.'"  *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009) (quoting *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988)).  But a party may raise a claim for the first time on appeal when it is a manifest error affecting a constitutional right.  RAP 2.5(a)(3).

Here, the issue does not affect a constitutional right because class certification falls under the civil court rules and the issues are not constitutional in nature.  *See* CR 23.  Therefore, because

Cedar/Valley failed to raise the issue below and fails to show a manifest error affecting a constitutional right, we decline to review Cedar/Valley's claim raised for the first time on appeal.[9]

B.      CLASS REPRESENTATIVES' CROSS-APPEAL

1.      Adequate Findings Of Fact

Class Representatives argue that the trial court failed to explain how typicality is lacking for the overtime, off-the-clock, and willful withholding of wages claims. We agree.

A trial court's decision to deny class certification will be upheld "if 'the record indicates the court properly considered all CR 23 criteria.'" *Chavez*, 190 Wn.2d at 515 (internal quotation marks omitted) (quoting *Schnall v. AT&T Wireless Services, Inc.*, 171 Wn.2d 260, 266, 259 P.3d 129 (2011)). However, we will reverse the denial of class certification "if the trial court fails to articulate its application of the CR 23 criteria to the facts relevant to class certification." *Id*. The trial court must support its CR 23 analysis with sufficient factual findings and adequate reference to the CR 23 criteria. *Id.* at 517.

In *Chavez*, registered nurses brought a class action lawsuit against their employer for failing to ensure that the nurses could take rest breaks, meal breaks, and record any missed breaks. *Id.* at 511. The trial court denied class certification because the class did not meet the requirements of predominance and superiority. *Id.* at 513.

---

[9] Even if we were to address the merits of this issue, there is no manifest error because analyzing whether a class is open-ended is not a requirement of CR 23. "Courts have criticized [definiteness] as superfluous because the existence of a definite class . . . [is] already ensured by the application of existing Rule 23(a) factors." William B. Rubenstein, 1 Newberg on Class Actions, § 3:1 at 153 (5th ed. 2021). As shown above, the class definition satisfied each of the Rule 23(a) factors for the meal and rest breaks claim.

In its ruling on predominance, the trial court found that class issues did not predominate "'because issues regarding shift, nurse type, nurse roles, and job duties, patient assignments and census, managers, and department cause the specifics for each class members to overrun any generalities.'" *Chavez*, 190 Wn.2d 516. At the class certification hearing, the trial court stated, "'[W]hat happens from shift to shift, from nurse to nurse, from nurse type to nurse type, from census to census and so on . . . would consume and overrun the specifics.'" *Chavez*, 190 Wn.2d at 516. The trial court also found that the class action would need at least nine subclasses, which would make the class unmanageable. *Id.* at 517. On appeal, our Supreme Court found that "the trial court failed to set forth factual findings that would support an order denying class certification and failed to identify the evidence it reviewed to support its decision." *Id*.

Here, the trial court provided even less information than the trial court did in *Chavez* in denying class certification for the overtime, off-the-clock, and willful withholding of wages claims. The trial court merely stated, "[Class Representatives] have shown typicality in relation to one claim, whether [Cedar/Valley] had a policy of adequately encouraging Class members to take meal and rest breaks during the relevant time period." CP at 1121. Thus, with regard to the overtime, off-the-clock, and willful withholding of wages claims, the trial court did not identify any evidence it reviewed in making its decision nor did it articulate its application of the CR 23 criteria in denying class certification. Therefore, the trial court failed to articulate the evidence it reviewed or provide adequate findings to support its denial of class certification for the overtime, off-the-clock, and willful violation claims. Accordingly, we reverse the denial of class

certification for the overtime, off-the-clock, and willful withholding of wages claims and remand to the trial court for further proceedings consistent with this opinion. [10,11]

2.      Cedar/Valley's Declarations And Merits

Class Representatives argue that the trial court abused its discretion by addressing the merits of the class claims at the certification stage.  Class Representatives also argue that the trial court erred by "accepting" Cedar/Valley's 62 current and former employee declarations "despite evidence of inherent coercion."  Br. of Respondent at 33 (boldface omitted) (capitalization omitted).  We disagree.

For class certification, a rigorous analysis of CR 23 must be completed to ensure that the prerequisites of the rule have been met.  *Weston*, 137 Wn. App. at 168.  "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011).  The trial court "may look past the pleadings" in determining certification issues.  *Weston*, 137 Wn. App. at 168.  Therefore, the trial court did not abuse its discretion by addressing the merits of the class claims at the certification stage.

---

[10]  In *Chavez*, although the Supreme Court held that an appellate court will reverse the denial of class certification if a trial court fails to articulate the facts relevant to the CR 23 class certification and the trial court in *Chavez* failed to support its CR 23 analysis with *sufficient* factual findings and adequate reference to the CR 23 criteria, the Supreme Court went on to review the trial court's decision.  190 Wn.2d 517.  Here, because the trial court provided *no* findings on typicality with regard to the overtime, off-the-clock, and willful withholding of wages claims, we follow *Chavez's* holding to the extent of reversing the denial of class certification with regard to those claims.

[11]  Because we reverse the trial court's denial of class certification for overtime, off-the-clock, and willful withholding of wages claims based on inadequate findings and remand to resolve the inadequate findings, we do not reach Class Representatives' argument that the trial court erred in not finding typicality for those claims.

As for the Class Representatives' claim that the trial court "accepted" Cedar/Valley's declarations, Class Representatives do not explain how the trial court "accepted" Cedar/Valley's declarations. The trial court mentions the declarations in its analysis of the commonality requirement, stating, "[Cedar/Valley] presented evidence from 62 class members," but the trial court did not state that it "accepted" the declarations. CP at 1119. Further, the trial court did not discuss the 62 declarations in analyzing any of the other CR 23 requirements. Class Representatives' challenge that the trial court erred by accepting Cedar/Valley's declarations fails.

CONCLUSION

We hold that the trial court did not abuse its discretion in granting class certification for the rest and meal breaks claim. However, the trial court failed to provide adequate findings for the typicality requirement in denying class certification for the overtime, off-the-clock, and willful withholding of wages claims. Therefore, we affirm the class certification of the rest and meal breaks claim; reverse the denial of class certification for the overtime, off-the-clock, and willful withholding of wages claims based on inadequate factual findings; and remand to the trial court to resolve the inadequate factual findings relating to typicality on the overtime, off-the-clock, and willful withholding of wages claims.

No. 54900-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, J.

Glasgow, C.J